WOLF CIGAR STORES COMPANY v. IRVIN L. KRAMER.

Decided April 25, 1908.

1.—Contract of Employment—Breach—Evidence.

In a suit for damages for breach of a contract of employment, evidence considered, and held sufficient to raise the issue whether or not the employer broke the contract by requiring of the employe the performance of duties substantially different from those which he was required to do under the contract, and hence the court properly refused a requested instruction practically eliminating that issue.

### 2.—Trial—Repetition of Instructions—When not Error.

It is only where the repetition of instructions gives undue prominence to one phase of the case, and such prominence is calculated to prejudice a party by inducing the jury to believe that the issue presented is the controlling one, that such repetition is objectionable. Instructions compared, and held not a repetition one of the other.

### 3.—Contract—Breach—Discharge of Employe—Charge.

It is proper for a trial court to refuse to give a special charge which selects from the evidence a single isolated fact, and seeks to give such fact controlling effect in determining an issue. Evidence considered, and rule applied in a suit by an employe against his employer for damages for breach of a contract of employment, the issue being whether or not the employer broke the contract.

### 4.—Contract of Employment—Breach by Employer—Duty of Employe.

In case of a breach of a contract of employment by the employer, it is the duty of the employe to minimize the damages as much as possible, first, by the use of reasonable diligence to secure another position of substantially the same character and grade as that which he lost; and, second, if such a position cannot be secured within a reasonable time, it then becomes his duty to use reasonable diligence to secure other employment for which he is fitted, and in either case the amount which he should have earned in this way during the term of service should be deducted from the damages resulting from the breach of the contract.

### 5.—Same—Profits of Business—Measure of Damage.

The plaintiff was employed for a certain period as manager of several cigar stores at a salary of $250 per month; before the expiration of the period he was wrongfully discharged by his employer; he could have secured employment as a bookkeeper at $75 per month, but refused to accept it, and, instead, established a cigar store of his own; during the time between the date when his store was opened and the date when his contract of employment would have expired his business yielded him no profit. Held, there was no error in refusing to permit defendant to inquire into the details of plaintiff's business subsequent to the expiration of the contract period for the purpose of showing the value of plaintiff's services to his business during the contract period, nor in refusing a charge submitting such matter as an offset to plaintiff's damages. Such inquiry would lead to no logical or certain conclusions.

Appeal from the District Court of Dallas County. Tried below before Hon. Thos. F. Nash.

*Coke, Miller & Coke* and *Fisher, Sears & Campbell,* for appellant.— The expression of an intention to breach a contract which is being performed does not constitute a breach of said contract. Kilgore v. N. W. Tex. Bap. Soc., 37 S. W., 601; New York Life Ins. Co. v. Thomas, 19 Texas Ct. Rep., 577; McIntosh v. Miner, 37 N. Y. App. Div., 483, 55 N. Y. Supp., 1074; Vittum v. Estey, 67 Vt., 158, 31 Atl. 144; Dingley v. Oler, 117 U. S., 490.

Where a discharged employe is offered the same or like employment to that from which he has been discharged, for the same period, and upon the same terms, before he has sustained any injury by reason of the discharge, no damages are recoverable by him on account of said discharge. Texas Ben. Assn. v. Bell., 3 W. & W., sec. 277; Weber v. Bradford, 34 Texas Civ. App., 543; Mudgatt v. Texas Tobacco Co., 61 S. W., 150·; Allgeyer v. Rutherford, 45 S. W., 628; Litchenstein v. Brooks, 75 Texas, 196; Bigelow v. American Mfg. Co., 39 Hun., 599;

DeLoraz v. McDowell, 68 Hun., 170, affirmed, 142 N. Y., 664; Beymer v. McBride, 37 Ia., 114; Squire v. Wright, 1 Mo. Ap., 172; Hecksher v. McCrea, 24 Wend., 304; Waite's Actions and Defenses, 456; 2 Sutherland on Damages, p. 473; Wood's Master and Servant, 244; Greenleaf on Ev., par. 261a; 20 Am. & Eng. Enc. of Law, 2d ed., p. 34.

If a discharged employe knows that he can not secure other employment of the same kind, it is his duty to use reasonable diligence to secure other employment for which he is fitted, and the amount he should have earned in this way during the term should be deducted from the contract price. Simon v. Allen, 76 Texas, 399; Kramer v. Wolf Cigar Stores Co., 99 Texas, 597.

Appellant was entitled to have the jury fully instructed as to what facts and conditions they might take into consideration in determining what was the reasonable value of appellee's services to himself, in the business which he engaged in during the period of his contract with appellant—which facts and conditions were shown by appellant's requested charge, which was refused, and which had not been fully explained to the jury in the court's charge. Kramer v. Wolf Cigar Stores Co., 99 Texas, 597; Van Winkle v. Satterfield, 58 Ark., 617, 25 S. W., 1113, 23 L. R. A., 853; Gates v. School District, 57 Ark., 370, 21 S. W., 1060; Jaffray v. King, 34 Md., 222; Huntington v. Ogdensburgh & L. C. Ry. Co., 33 How. Prac. (N. Y.), 416; Toplitz v. Ullman (Com. Pl.), 20 N. Y. Supp., 863; Lee v. Hampton, 30 So. (Miss.), 721; Willis v. McNeill, 57 Texas, 477; Adkins v. Galbraith, 10 Texas Civ. App., 175; Missouri, K. & T. Ry. v. Bishop, 34 S. W., 323; Clardy v. Wilson, 24 Texas Civ. App., 196.

*Etheridge & McCormick, Rhodes S. Baker* and *Hexter & Kramer,* for appellee.—It was not error for the court to refuse to permit appellant to inquire into the condition of plaintiff's business subsequent to the expiration of the contract period, for the purpose of reflecting upon the value of plaintiff's services to his business during the contract period. Kramer v. Wolf Cigar Stores Co., 99 Texas, 597; Simon v. Allen, 76 Texas, 399.

BOOKHOUT, ASSOCIATE JUSTICE.—On September 9, 1902, appellant, then operating under the name of Union Cigar Stores Company, and appellee entered into a written contract by which appellee agreed to act as general manager of all of appellant's Dallas stores, performing such duties as are usually entailed upon a general manager under like circumstances, for the term of one year at a monthly salary of $250. At the expiration of the one year the contract was extended for an additional year. Appellee continued in the services of appellant under said contract from September 9, 1902, until February 14, 1904, when he alleges he was wrongfully discharged. At some time during his employment under said contract, and before his unlawful discharge, his official title was changed to chief clerk, which change was one in name only, his duties remaining absolutely the same. At the time appellee was employed the only store appellant operated or owned was store No. 4, which was its headquarters and conveniently equipped and located for use as a basis of operations. At the time of appellee's

alleged unlawful discharge, appellant was operating and conducting in the city of Dallas, all under the general management of appellee, three stores, known respectively as store No. 4, store No. 5, and store No. 9. Store No. 4 was the largest of all the stores. Store No. 9 was the second largest; store No. 5 was the smallest of the stores. It was situated in the lobby of the St. George Hotel, and was in size about 8 x 20 feet, (the size of an ordinary hotel cigar stand). There was no provision there for the keeping of surplus stock; there was no vault, no desk, and no safe. Each store was under the direct supervision of a chief clerk, and in turn was under the direct control of appellee as general manager. The duties of chief clerk at store No. 5 were those of an ordinary salesman, standing behind the counter, handing out cigars, papers, magazines, chewing gum, etc., taking care of the show-cases and counters, cleaning them and keeping them in order, as also cleaning and washing show-cases and wall cases, thus performing the combined duties of salesman and porter. His hours for work were from 6:30 a. m. to 10:30 p. m. Store No. 5 was the only store at which magazines, periodicals and books were kept for sale. The salary paid to chief clerk at store No. 5 varied from $10 to $15 per week.

On or about February -14, 1904, at which time appellee claims to have been unlawfully discharged, he received from appellant written notice to become "Chief Clerk" at store No. 5, at the same salary he was then receiving and until the expiration of his contract, or other arrangements would be made. He also received a letter demanding the same change, and saying further that it would regard and construe his failure "to deliver over to us store No. 4 both as an act of insubordination as well as a refusal to accept our proposition to place you in charge of store No. 5, as above indicated." Appellee refused to accede to the proposed change or to accept the new position, because it necessitated the performance of duties which were subordinate, inferior and materially different from those which he had contracted to perform, and tended to injure his business standing. Thereupon, possession of the store in which appellee had his headquarters was peremptorily demanded, and a suit therefor threatened. Upon agreement between appellant's and appellee's attorneys, possession was surrendered on February 14, 1904, without prejudice to appellee's rights.

At the time of appellee's unlawful discharge there was no opening in the city of Dallas for his employment in a like or similar capacity to that in which he was employed by appellant. Appellee had ·had considerable experience as ,a bookkeeper and after his unlawful discharge could have secured employment as a bookkeeper at $75 per month. He preferred not to accept such employment, and consequently immediately set about preparing to embark in business on his own account, which he did on April 30, 1904. Up to September 8, 1904, the date on which appellee's contract employment should have expired, appellee's business showed no profit; to the contrary, during that period it was operated at a loss. The case was tried before a jury, and resulted in a verdict in favor of appellee in the sum of $1,076.50, upon which verdict judgment was duly entered and defendant appealed.

*Opinion.*—Error is assigned to the court's refusal of special charge

No. 1, requested by defendant. By this charge appellant sought to have the jury instructed that plaintiff was only entitled to recover one hundred and thirty eight dollars and to return a verdict in his favor for that sum only. The plaintiff plead, in substance, that "on or about February 14, 1904, the defendant, without cause or fault on the part of this plaintiff, breached its contract with this plaintiff and with an unjust and malicious desire to injure this plaintiff and disabling him from discharging efficiently the duties of his then existing contract, did discharge plaintiff from its employ, and did seek to humiliate plaintiff. That among other wrongful acts so done by defendant, it sought to withdraw plaintiff from the place of business in which he had theretofore served the defendant, and from which he could efficiently discharge his duties under said contract, and to reduce him from his rank as general manager of its Dallas stores, and place him as clerk merely in a small cigar and news stand, which defendant operated in the St. George Hotel in the city of Dallas, and over which, with other stores, plaintiff had theretofore been general manager." He then plead in detail the specific facts wherein he would have been required to perform duties not contracted for and incompatible with his rank and duties as general manager of defendant's stores, had he been compelled to move from store No. 4 to store No. 5; that defendant notified him in writing of its requirement that "he transfer himself to said new and inferior employment, and informed him that it would treat his refusal as a violation of his contract and an act of insubordination, and would and did demand of plaintiff an abdication of his duties under the aforesaid contract, and his surrender of the keys to the store in which he had theretofore made his headquarters. That plaintiff refusing to comply with the requirements aforesaid, was dismissed and discharged from defendant's employ."

On the former appeal of this case we held that the undisputed evidence showed that appellant had tendered appellee the same employment, in the same city, for the same length of time, at the same salary and the same duties which he had been performing, and this being so he was only entitled to recover $138, the amount due him at the time his services for appellant terminated, and reversed a judgment in favor of plaintiff for a larger sum, and rendered judgment in his favor for that amount. 89 S. W., 995.

A writ of error was granted by the Supreme Court and that Court held that the evidence was sufficient to raise "the issue whether or not the appellant broke the contract by requiring of plaintiff the performance of duties substantially different from those which he had agreed to perform," and held that we properly reversed the judgment, but that the facts were such that it was not proper for this court to render judgment. 99 Texas, 597. The facts on the present appeal are substantially the same as those on the former appeal, and in deference to the opinion of the Supreme Court we hold that appellant's requested charge No. 1 was properly refused.

Nor was there error in refusing special charges Nos. 16 and 7, the refusal of which is made the basis of the second and third assignments. These charges present substantially the same proposition as that embraced in the first assignment. These charges conflict with the opinion

of the Supreme Court on the former appeal of this case, and were therefore properly refused.

The giving of plaintiff's special charge No. 1 is assailed as error. This charge is as follows: "If you find from the evidence, that plaintiff was ordered to assume a position with duties materially different or inferior from those for which he had contracted; and if you further find that he refused to do so, and that because of such refusal the keys of store No. 4 were demanded of him, and he surrendered the keys, then you are instructed that plaintiff was wrongfully discharged, and you will find for the plaintiff."

It is contended that this charge is on the weight of evidence and covered an issue specifically submitted by the court's charge, upon which issue the evidence was very conflicting. The part of the court's charge which it is claimed covered this issue is the sixth paragraph, as follows: "If you find, and believe from the evidence before you, that in the change proposed by the defendant the plaintiff would have been required to take a subordinate position, or one that was substantially different in its work and duties from the one for which he had contracted, then you will find by your verdict that the plaintiff was wrongfully discharged."

The special charge announced a correct proposition of law and was not on the weight of evidence and was applicable to a phase of the case not covered by the main charge. The main charge contained no reference to the surrender of the keys by appellee to store No. 4.

The giving of special charge No. 1 did not give undue prominence to a phase of the case covered by the court's charge within the meaning of the law. Ratto v. Bluestein, 84 Texas, 59; Brady v. Georgia, etc. Ins. Co., 24 Texas Civ. App., 466. As stated in the case of Ratto v. Bluestein, "it is only where the repetition of instructions gives undue prominence to one phase of the case, and such prominence is calculated to prejudice a party by inducing the jury to believe that the issue presented is the controlling one, that such additional instructions are objectionable."

Nor was there error in the court's action in refusing appellant's special charge No. 13, as follows: "You are charged that defendant had the right to demand of plaintiff the keys to store No. 4, notwithstanding that plaintiff was general manager of defendant's stores at Dallas, and the demand made upon plaintiff for said keys to defendant did not of itself constitute a breach of the contract between plaintiff and defendant, and did not constitute a discharge of plaintiff by defendant." Whether or not the demanding by appellant of appellee the keys of store No. 4 constituted a breach of the contract depended upon all the facts and circumstances surrounding the parties. This charge selects from the evidence a single isolated fact and seeks to have such fact given controlling effect in determining the issue.

The sixth and seventh assignments of error present the same proposition of law. One complains of the refusal of a special charge and the other of the exclusion of testimony.

Special charge No. 9 is as follows: "You are instructed that if you believe from the evidence that the plaintiff's services in his cigar business, established on April 30, 1904, were reasonably worth to himself

$250 or more per month, from that date to September 9, 1904, the expiration of the contract sued on, then you can not find for plaintiff, in any event, damages for this period. If you believe that his services in said business were reasonably worth to himself less than $250 per month during said period, then his damages for said period could in no event exceed the difference between the reasonable value of his services to himself in said business and $250 per month.

"In this connection you are further charged that the value of plaintiff's services to himself is not necessarily what it would have cost to employ him, or one like him, but the pecuniary value of that which his services yielded him in his business. This might consist of something more than profits actually received in money, if any, and if no such profits were made by plaintiff during the months through which his services with defendant should have extended, yet, if appreciable value was added to his business by plaintiff's efforts during said period, you may take the same into consideration in determining the value of plaintiff's services to himself for said period."

The undisputed evidence shows that at the time of the termination of appellee's services with appellant he could not have obtained employment in Dallas as general manager with duties substantially the same as he filled in his employment by appellant. He could, however, have secured employment as a bookkeeper at $75 per month, and he was competent to perform the duties of bookkeeper. He did not accept employment, but on April 30, 1904, opened up a cigar business for himself. His business up to the 9th day of September, 1904, the expiration of his contract of employment with appellant, had been unprofitable. He had given his services to the business, which consisted of selecting a location for the same, securing a house for the same, planning the arrangement of his business, fixing the same up attractively, buying his stock, employing salesmen, in advertising, in keeping his own books and in selling cigars. Appellee testified that, aside from fitting out his new store with new furniture, showcases, etc., he expended in sundry improvements, such as papering, painting, wiring, new front for store, linoleum, draperies, gas fixtures, water cooler, sundry hardware, advertising his business before opening, architect's services, stationery to begin with, and a bonus in order to get immediate possession of the place, the aggregate sum of $1,746.39, not including current salaries, which aggregated $200 per month. These expenses were all incurred during the first four months of his business during the time covered by his contract with appellant, and he charged all these expenses up against his business for those four months. The benefits he derived from the expenditures mentioned extended over different periods, of from a year to more than three years, after the same were made. His gross sales during the first four months of his business aggregated $12,769, twenty-five percent of which was profit. His sundry expenditures for the benefit of his business, made during that period, aggregated $2,546.39, not including his expenditures for permanent improvements (showcases, furniture,, etc.,—which aggregated $1,426).

From the time appellee opened up his business until the expiration of the time covered by his contract with appellant, September 9, a period

of about four months, his business showed a loss. From that day it has continued to be a paying business. Appellant offered to prove by appellee the details of his said business after said date in the way of receipts, disbursements, profits, etc., but on exception being made, the court refused to permit appellant to make this character of proof, and excluded all evidence concerning the business of appellee subsequent to September 9, 1904, the date of the expiration of the contract sued on by appellee; to which action of the court appellant excepted. This exception is made the basis of the seventh assignment of error.

A discharged employe can not sit idly about during the contract period and recoup in damages, but the law imposes upon him certain obligations with reference to minimizing the damage that he has sustained: First, it becomes his duty to use reasonable diligence to secure another position of substantially the same character and grade as that which he had held with defendant. If within a reasonable time such a position can not be secured, it then becomes his duty to use reasonable diligence to secure other employment for which he is fitted, and in either case the amount which he should have earned in this way during the term of service should be deducted from the damages resulting from the breach of the contract.

The evidence shows that appellee could not have secured employment of the same character and grade as that he had with the appellant, because there was no opening for the same in Dallas. Appellee could have secured employment as a bookkeeper, for which position he was fitted, at a salary of $75 per month. Had he remained idle during the remainder of his contract period with appellant, this amount would have been the sum to be deducted from his recovery. As stated by the Supreme Court on the former appeal, "should it be found that no employment of the defined character could have been had by the diligence required, then and then only the question will arise as to the deduction to be made on account of plaintiff's business." In such event, it was said, his recovery should be diminished to the extent of the pecuniary value of that which his services yielded to him in his business.

We do not think that the court erred in refusing to permit appellant to show the details of appellee's business after the termination of his contract of employment by appellant. Had the inquiry been permitted, and it had been shown that plaintiff's business was highly profitable how much of that condition could be attributed to plaintiff's services after the contract period and how much before the contract period; what portion of the success of plaintiff's business could be attributed to the value of his location; what portion to the value and the personality of his clerks; what portion would be attributed to the amount of capital invested and from time to time increased; what portion could be attributed to changed conditions generally, and especially in the locality where plaintiff's place of business was situated; and, lastly, what portion of the success could be attributed to other conditions and circumstances too numerous to mention? It can readily be seen that to permit inquiry along the line suggested would have been to embark upon a sea of uncertainty from which logical deductions and conclusions would have been impossible. The evidence showed,

under rule two, above announced, the amount to be deducted from plaintiff's recovery; and it seems from the opinion of the Supreme Court that the inquiry as to the value of his services to his business, only became important in the event of failure of all other rules laid down for determining the measure of damages. Then again, the court permitted the appellee to testify that his business at the time of the trial was a profitable one. Upon the measure of damages the court instructed the jury as follows: "It does not appear from the evidence that after the plaintiff's business relations with defendant were severed that plaintiff sought employment at the hands of any third person. However, the plaintiff admits and testifies that he could have obtained employment as a bookkeeper at a salary of $75 per month. Therefore, if you find the plaintiff was wrongfully discharged you will take from the amount which he was to receive under the contract at $250 per month, from the 14th day of February, 1904, to the 8th day of September, 1904, the sum of $75 per month for said time and add to this remainder the sum of $138, which was due the plaintiff at the time their business relations ceased, unless you find for the plaintiff under the following paragraph of this charge."

"The testimony shows that after the business relations between plaintiff and defendant were severed, that plaintiff engaged in business on his own account, and if you find from the evidence that the plaintiff was wrongfully discharged from defendant's employment, and further find that the reasonable value of his services to himself in his business was in excess of $75 per month, for the period of time between the 14th day of February, 1904, and the 8th day of September, 1904, then the measure of your finding should be the contract price of $250 per·month from the 14th day of February, 1904, to the 8th day of September, 1904, less the reasonable value of his services to himself in his business, with interest at six percent per annum from the 8th day of February, 1904, and to this amount add $138."

"The value of plaintiff's services to himself need not be limited to profits which he might have received during the time that elapsed the 14th day of February, 1904, and the 8th day of September, 1904, but you may consider all the circumstances and facts in evidence before you in order to determine what was the reasonable value of plaintiff's services to his business that were rendered prior to September 8, 1904."

This was sufficient and there was no error in refusing appellant's special charge No. 9, or in refusing to permit appellant to inquire into the details of appellee's business subsequent to the expiration of the contract period, for the purpose of showing the value of appellee's services to his business during the contract period.

The evidence was sufficient to support the verdict and the appellant's motion for new trial was properly overruled.

Finding no reversible error in the record the judgment is affirmed.

### OPINION ON REHEARING.

We find that our conclusion that appellant was permitted to show that the appellee's business had been prosperous from September 1,

1904, to the time of the trial, is not supported by the record. The appellant did so testify, but a more careful examination of the stenographer's report discloses that after this testimony was introduced, an exception was made to it, which the .court sustained.

This does not affect the conclusion reached by us in the opinion, and the motion for rehearing is overruled.

*Affirmed.*

Writ of error refused.