MARK HAYES *v.* RESOURCE CONTROL, INC.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued November 12, 1975—decision released January 20, 1976

*Richard F. Connors,* for the appellant (defendant).

*T. Paul Tremont,* with whom, on the brief, was *Robert R. Sheldon,* for the appellee (plaintiff).

COTTER, J. The controversy arises from an agreement between the defendant, engaged in manufacturing water control devices and other related items, and the plaintiff, an engineer who conducted extensive research and development on such devices. The agreement provided for employment of the plaintiff for a term of three years at an annual salary of $25,000 plus certain stock options and for the sale of his proprietary interest in a water pollution device in exchange for 20,000 shares of the defendant's stock. In the contract of employment the parties agreed that although the plaintiff would initially serve as vice president of sales and market-

ing, his assignment might be changed provided, however, that the change could be only to a position with supervisory or managerial functions. For about six months the plaintiff, who did no direct selling, served as vice president of sales and marketing and supervised four salesmen who were paid a salary plus commissions. In addition, he performed duties relative to the continued development of the water pollution process. During this time the defendant sold its product only in the New England and middle-Atlantic states and had no sales operation or organization west of the Rocky Mountains. As a result of financial difficulties, the defendant, on September 26, 1969, asked the plaintiff to give up his position as vice president and become a salesman, altering his compensation from a salary basis to that of commission on sales, which the plaintiff rejected. The corporation accepted the plaintiff's rejection of that proposal. A few days later, on Thursday, October 2, 1969, the plaintiff received a memorandum from the defendant entitled "reassignment" assigning him to the position of Manager, Western Sales District, which at the time did not exist, and directed him to proceed to the greater Los Angeles area on or before Monday, October 6, 1969, establish headquarters and recruit sales-type personnel there. No authority was given to the plaintiff to pay salesmen in the "western sales district" although he could hire them on a commission basis. No western sales district or west coast sales office was ever subsequently established by the defendant even though the president and another vice president considered it to be a fertile territory for the sale of the defendant's product. The president of the defendant corporation did not communicate with Hayes about going to Los Angeles or about this reassignment

prior to or after the issuance of the October 2, 1969 memorandum. Hayes refused to go to Los Angeles and after several attempts at negotiation by the plaintiff and his lawyer, he was handed his employment termination for breach of contract when he showed up for work on October 6, 1969 at West Haven, his usual place of employment.

Any unjustified reduction of the rank or a material change in the duties of an employee who is engaged to fill a particular position, not within the contemplation of the contract, constitutes a breach of contract. *Mair* v. *Southern Minnesota Broadcasting Co.*, 226 Minn. 137, 140, 32 N.W.2d 177; *Rudman* v. *Cowles Communications, Inc.*, 30 N.Y.2d 1, 10, 330 N.Y.S.2d 33, 280 N.E.2d 867; *Marks* v. *Cowdin*, 226 N.Y. 138, 146–47, 123 N.E. 139; annotation, 63 A.L.R.3d 539; annotation, 4 A.L.R.2d 276; 53 Am. Jur. 2d, Master & Servant, § 44. In order that disobedience shall create either liability on the part of the employee or a right of the employer to discharge him, the employer's direction must have been reasonable; but when there is a refusal to permit the employee to perform the substantial or principal service he agreed to perform, and a direction is given to substitute a new service, then the employee may treat such refusal and direction as a discharge. 9 Williston, Contracts (3d Ed. Jaeger) § 1013C and cases cited; see also 3A Corbin, Contracts § 683 and cases cited. Thus we must determine whether the plaintiff's reassignment to Los Angeles was reasonable and whether his discharge by the defendant constituted a breach of his contract, as the trial court concluded.

It is apparent from the contract[1] that the proposed reassignment would have entailed a considerable change in the plaintiff's position. The reassignment relieved him of his responsibilities as vice president, and instead of supervising four salesmen and working on pollution in the defendant's main office, he would be charged with establishing a new regional office some 3,000 miles away. That this entailed a demotion is made clear by the fact that no vice president for sales and marketing was hired to replace him, and that the reassignment contemplated that he make direct sales. Under similar circumstances courts have held that refusal to submit to such reassignments did not justify discharge by the employer, especially where, as here, the plaintiff's contract expressly forbade demotion below a managerial or supervisory position.

---

[1] The text of the "reassignment" memorandum appears below.

October 2, 1969

TO:        M.J. HAYES

FROM:      A.B. SMITH

SUBJECT:   REASSIGNMENT

As directed by the Board of Directors and effective immediately, you are reassigned to the position of: Manager, Western Sales District. In line with this reassignment, you are relieved of your responsibilities as Vice President, Sales and Marketing.

By definition, Western Sales District is Washington, Oregon, California and Idaho.

On or before October 6, 1969, you will establish headquarters in the greater Los Angeles area and begin recruiting sales type personnel (compensation for such personnel to be on a straight commission basis only). In conjunction with the recruitment of personnel, I believe it desirable that you begin whatever direct sales contacts and attempts that you may choose to make in order to show beginning sales for the personnel who you will have selling the water units.

Following completion of recruitment and training of these sales types at your direction, the numbers and location of which will be

In *Marks* v. *Cowdin,* supra, a sales manager was informed that he would have to report to a new person bearing the title of sales manager and to handle only a branch of the company's business. The employer contended that this reassignment was not a demotion inasmuch as the plaintiff would have salesmen beneath him and would be developing a new branch of the company's trade. Id., 142. The court, in an opinion written by Judge Cardozo, disagreed and found that changing his duties constituted an unjustified change in his supervisory and managerial position, and that the plaintiff's refusal to submit to this change did not justify his discharge. Ibid.

In *Wolf Cigar Stores Co.* v. *Kramer,* 50 Tex. Civ. App. 411, 109 S.W. 990, the employee, who had an employment contract with the defendant, was reassigned from general manager in charge of the defendant's three cigar stores to chief clerk in the defendant's cigar stand in a hotel. Instead of super-

---

left at your discretion, I would like a complete evaluation, summary and recommendation from you as to the manner in which we can best support such an activity with financial success.

In view of our present financial condition, I would like you to keep expenses to a minimum. However, in view of the fact that your reassignment will take you away from your family for a goodly amount of time, I think it fair that the company allow you to travel between Connecticut and California for one long weekend a month at company expense for the next 3-4 months until your immediate mission has been accomplished. Upon completion and approval of your recommendations as noted above, we can reassess your permanent base of operation and decide then whether to move you permanently to the West Coast with family.

While I realize that this is a monumental task and may come as some surprise to you, I hope that you will accept the challenge and do this job which needs doing so desperately.

ABS:jsp

*Avery B. Smith*

vising a number of employees at all the stores, the reassignment made him the sole employee at the stand, although this position was still "supervisory." The court upheld his refusal to accept this demotion.

Similarly, in *Mair* v. *Southern Minnesota Broadcasting Co.*, supra, the court found it unreasonable for a broadcasting company to order its general manager to issue all of his orders through a newly-appointed assistant and not to make any expenditures without her permission. The court reasoned that "[t]aking away his authority to issue orders directly was certainly inconsistent with his contract of employment and his position as manager." Id., 139.

Also, in *Rudman* v. *Cowles Communications, Inc.*, supra, 12, the court held that a person hired to direct a new division of a publishing company could not be reduced to a position in which he was supervised by "just about every other editor and junior executive." The court also found that his discharge had been wrongful and not based on inexcusable insubordination. Id., 5.

These cases are merely illustrative of the applicable principles which govern this case. 9 Williston, op. cit. § 1013C; 3A Corbin, op. cit. § 683; 56 C.J.S., Master and Servant, § 42h; 53 Am. Jur. 2d, Master and Servant, §§ 44, 55.

The defendant sought on September 26, 1969, to demote the plaintiff from a salaried vice president to a salesman on commission, which he refused. The October 2 memorandum then attempted to accomplish indirectly what the corporation failed to effect directly six days earlier. Directing Hayes on Thursday that he must be in Los Angeles on or

before the next Monday, open an office and begin direct sales himself and hire salesmen in a vast area covering the states of California, Washington, Oregon and Idaho, where the company had no established business, is foreign to and not within the contemplation of the parties at the time of the making of the agreement. *Crillo* v. *Curtola,* 91 Cal. App. 2d 263, 272–73, 204 P.2d 941. Although the defendant's president and a vice president stated that they considered the West Coast a fertile area for selling the defendant's product, yet they never established an office in that region after the plaintiff was discharged. Even though the plaintiff would be operating 3,000 miles from the home office, he was given no authority to pay salesmen he might hire, nor did the memorandum mention the conditions or limitations under which he was to operate in establishing an amorphous organization on the west coast which the corporate president recognized in his memorandum as a "monumental task." The memorandum was an insubstantial and inadequate basis from which the plaintiff could be expected to establish an operation of the magnitude described with only four days' notice. It is significant that the defendant's president never spoke to the plaintiff about a possible western sales district assignment prior to issuance of the October 2, 1969 memorandum, and despite the plaintiff's continued efforts to speak with him about this abrupt change in duties, the defendant's only response was to terminate the plaintiff's contract when he arrived for work on Monday morning. From these facts the trial court did not err in concluding that the reassignment to go to Los Angeles was unreasonable and that the plaintiff's discharge by the defendant constituted an actionable breach of his employment contract.

The conclusion of the court that the reassignment of the plaintiff was unreasonable and not made in good faith did not change the theory of the cause of action and was not at variance with the pleadings and proof, as claimed by the defendant. *Reciprocal Exchange* v. *Altherm, Inc.,* 142 Conn. 545, 551, 115 A.2d 460; *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 66, 221 A.2d 263.

There is no error.

In this opinion the other judges concurred.