DELAWARE MILLS, INC., Appellant, *v.* CARPENTER BROS., INC., Respondent.

Third Department, March 17, 1922.

**Statute of Frauds — action for purchase price of carload of feed — memorandum slip made by plaintiff's agent in duplicate containing all terms of contract and copy delivered to but not signed by defendant's representative — parol evidence admissible to identify memorandum slip and to prove circumstances under which it was made and delivered — subsequent letters signed by defendant sufficient, with memorandum slip, to satisfy statute.**

In an action to recover the purchase price of a carload of feed the defendant interposed the defense of the Statute of Frauds. It appeared that the plaintiff's salesman orally negotiated with the agent of the defendant for the sale of a carload of stock feed to the defendant, with option to order said feed shipped in mixed car lots; that at the close of the negotiations the substance thereof was reduced

to writing by plaintiff's salesman in the presence of defendant's agent on a regular order pad of the plaintiff which was partly printed and partly written in pencil, and the carbon copy provided for in the pad was then delivered to defendant's agent but not signed by him; that said memorandum slip contained all of the essential elements of a contract with the exception of defendant's signature. Sometime after the order was taken plaintiff wrote to the defendant as follows: "Do you wish us to ship forward car of stock feed, your order of June 23? If not, kindly give us an assortment on a mixed car and we will ship some of the stock feed in that car and hold the remainder for future orders." This letter was returned to the plaintiff with defendant's reply indorsed thereon as follows:

"We will try to give you specifications for this car after the 15th. We are loaded up now.                       " (Signed) CARPENTER BROS."

Later, the plaintiff, having received no shipping directions, wrote the defendant: "Since June 23rd, we have been holding your order for 30 tons Delaware stock feed. Can you not help us out and give us directions on this car now or at least on a part of it. * * *" The defendant returned this letter to the plaintiff with its reply indorsed on it as follows:

"Please have Mr. Ingersoll call with samples of stock [meaning stock feed] and your best scratch [meaning best mixed chicken grain]. We are now getting our big stock worked off so we can order out a mixed car.
                       " (Signed) CARPENTER BROS., INC."

*Held*, that parol evidence was admissible to identify the memorandum slip and to prove the circumstances under which it was prepared and delivered to defendant's agent;

That the responses of the defendant to the plaintiff's letters constituted tacit admissions of the order set forth in the memorandum slip, and with said memorandum slip fully satisfied the Statute of Frauds.

COCHRANE, P. J., and H. T. KELLOGG, J., dissent.

APPEAL by the plaintiff, Delaware Mills, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Broome on the 6th day of August, 1921, upon the decision of the court rendered after a trial without a jury at the Broome Trial Term, a jury having been waived, dismissing the complaint upon the merits.

The plaintiff claimed that the defendant ordered a carload of feed known as "Delaware stock feed" and subsequently refused to accept delivery and plaintiff seeks to recover damages for breach of the contract. There is no dispute as to the amount of damages, nor does the plaintiff dispute any of the findings of fact. The sole issue arises under the defendant's defense under the Statute of Frauds claiming that the selling agreement was not in writing and on the ground that there was no memorandum signed by the defendant sufficient to satisfy the provisions of that statute.

The plaintiff conducted a wholesale grain and feed business at Deposit, N. Y. The defendant was in the feed business at Monroe, N. Y. On June 23, 1920, a salesman of the plaintiff named Ingersoll called upon the defendant at its place of business at Monroe, N. Y., and had oral negotiations with one Carpenter, an

officer of the defendant, acting in behalf of the defendant respecting the sale by the plaintiff to the defendant of a carload of thirty tons of Delaware stock feed. The court has found that at the close of the negotiations the substance thereof was reduced to writing by Ingersoll in the presence of Carpenter on a regular order pad of the plaintiff which was partly printed and partly written in pencil and the carbon copy provided for in the pad was then delivered by Ingersoll to Carpenter who took and retained it and the original was mailed to the plaintiff at its place of business. The following is a copy of the material portions of this memorandum, the italics representing the portion written in pencil:

" Delaware Mills, Incorporated.
" confirmation of sale.
" Terms: Sight draft payable on arrival of shipment.
" Deposit, N. Y., 6/23, 1920.
" Ship to *Carpenter Bros.,*
R. R. Station, Monroe, N. Y.
" Time of Shipment.  *To be ordered later*
P. O.          "          "
" Salesman *Ingersoll*

Bank *as usual*

" This contract is contingent upon lack of transportation, strikes, accidents or unavoidable conditions beyond our control. Seller shall in no case be held responsible for any damage arising therefrom.

" Prices here named based on present freight rates; any advance to be paid by buyer. All conditions must be expressed in writing.

| Quantity | Commodity | Pkg. | Price |
|----------|-----------|------|-------|
| " *1 car* | *Delaware stock feed* | | |
| | *30 tons* | *100s* | *73.50* |

" *The above to be ordered in mixed cars if desired.  Buyer's option.*"

This confirmation slip embodies every essential element of a contract since it includes the name of the buyer and of the seller, the kind and quantity of goods, the price, terms of payment and place of delivery. The time of shipment was not definitely fixed but was " to be ordered later " which the law construes to mean within a reasonable time. There is no contention that time was of the essence of the contract. This confirmation slip was not signed by the defendant and it, therefore, did not constitute an enforcible contract under the Statute of Frauds (Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571), which provides that such a contract shall not be enforcible " unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

It is the contention of the plaintiff that the defendant did sign such a memorandum, which, connected with the confirmation slip, satisfied the statute.

On September 1, 1920, no shipping directions having been received, the plaintiff wrote the defendant as follows: " Do you wish us to ship forward car of stock feed, your order of June 23? If not, kindly give us an assortment on a mixed car, and we will ship some of the stock feed in that car and hold the remainder for future orders."

This letter was returned to the plaintiff with defendant's reply indorsed thereon:

" We will try to give you specifications for this car after the 15th. We are loaded up now.

" (Signed)        CARPENTER  BROS."

Again on October 5, 1920, the plaintiff having received no shipping direction, wrote the defendant: " Since June 23rd, we have been holding your order for 30 tons Delaware stock feed.  Can you not help us out and give us directions on this car now or at least on a part of it.   *   *   * "

This letter was also returned to plaintiff with defendant's reply indorsed on it:

" Please have Mr. Ingersoll call with samples of stock [meaning stock feed] and your best scratch [meaning best mixed chicken grain].  We are now getting our big stock worked off so we can order out a mixed car.

" (Signed)        CARPENTER  BROS., INC."

The plaintiff wrote again on October 27 and November 9, 1920, urging shipping directions for a car of stock feed or to give an assortment for a mixed car and take out at least a few tons of the stock feed in the assortment.  To these letters defendant did not reply.  Finally on November 19, 1920, plaintiff wrote that it would ship the car.  In reply to this the defendant on November 27, 1920, telegraphed the plaintiff repudiating the order and following it by a letter of the same date, in which it took the position in effect that it had no such order on its files and that it had only a verbal understanding with Ingersoll on a mixed car proposition which was never consummated, due to the failure of Ingersoll to call and obtain an order for the same.  On the trial Carpenter testified substantially to that understanding of the negotiations and denied the making and receipt of the confirmation slip.  The court below, however, has found that the confirmation slip was prepared at the conclusion of the negotiations in the presence of Carpenter and a carbon copy of the same was delivered to him.

It appears from the testimony that there was a decline in the market price of stock feed after June twenty-third from seventy-three dollars and fifty cents per ton on that date to forty-five dollars per ton on November 26, 1920, when the defendant repudiated the contract.

It further appears that the defendant had bought of the plaintiff through Ingersoll several carloads of grain prior to this time and that on those occasions similar confirmation slips were handed to the defendant. This was conceded by Carpenter to have been the practice of the plaintiff except on the instance in question here. The evidence amply sustains the finding of the court below that a confirmation slip was so prepared and a copy of the same delivered.

*Jenkins, Deyo & Hitchcock* [*Israel T. Deyo* of counsel], for the appellant.

*Joseph W. & Percy V. D. Gott* [*Percy V. D. Gott* of counsel], for the respondent.

HINMAN, J.:

It is only by reading together the memorandum slip containing the terms of the contract and the letters of the plaintiff of September first and October fifth with the defendant's answers indorsed thereon that we can say a complete written contract, or note, or memorandum, signed by the party to be charged has been sufficiently established to satisfy the Statute of Frauds.

Counsel for the defendant urges two objections. He contends that the parol evidence given by the salesman Ingersoll was inadmissible under the Statute of Frauds to identify the memorandum slip and to prove the circumstances under which it was prepared and delivered. He further contends that the defendant in his answers to the letters of the plaintiff did not admit the giving of the order set forth in the memorandum slip and that, therefore, the writings taken together did not set forth the essential terms of a contract.

To sustain his first contention, counsel for the defendant relies upon the cases of *Wright* v. *Weeks* (25 N. Y. 153); *Drake* v. *Seaman* (97 id. 230), and *Evans* v. *Pelta* (146 App. Div. 749). He calls attention to the following expressions used by ALLEN, J., writing one of the opinions in *Wright* v. *Weeks* (*supra*): " So an agreement need not be perfect by itself. It may be made certain and definite, and thus valid, under the statute, by reference to another writing, as well as by incorporating the entire contract in one paper. But the reference must be to another paper, and so distinct as to make that paper a part of the contract itself. (*Kenworthy* v. *Schofield*, 2 Barn. & Cres. 945.) The parties cannot unite two papers,

so as to make them unitedly constitute a valid contract, unless they are physically joined, or the intention to unite them appears on the face of the papers. If the connection between two papers depend upon verbal testimony, or if the reference in the written memorandum is to something verbal, the whole evil intended to be remedied by statute will be experienced."

A careful reading of the *Wright* case demonstrates that the statement of the learned justice so far as it related to connecting two separate papers, was mere dictum. The case involved a contract for the sale of land where the writing fixed the price but referred to " terms as specified," not in the memorandum and which rested entirely in parol. The only writing in that case showed on its face that it was not a complete agreement in writing. The time and manner of payment of the purchase price was of the essence of the agreement. It was just as necessary to the plaintiff as the portion which was committed to writing. It was one of the terms of the agreement and was left in parol. It was not evidenced by any additional writing. The identification by parol evidence of two separate writings as constituting a contract was not involved. Moreover, the case of *Kenworthy* v. *Schofield* (2 Barn. & Cres. 945), cited by ALLEN, J., is not helpful in determining the question which we have here. That was a case decided in 1824 and related to a sale at auction where certain conditions of sale were read before the bidding commenced but were not attached to the catalogue which was the only thing signed by the auctioneer. The court said that " as they were not actually attached or clearly referred to, they formed no part of the thing signed." The catalogue made no reference to these conditions whatsoever, and it was not even proved that the purchaser heard them read or knew of the conditions. Moreover, there are other English cases which have come to be the leading cases and recognized in this State to which reference will be made which were decided long subsequent to the opinion in *Kenworthy* v. *Schofield* (*supra*), and relax the rule there laid down. What was said in the case of *Drake* v. *Seaman* (*supra*) was not at all intended to decide the present case. The court was dealing with a writing which omitted any reference to the subject-matter of the agreement ·for which a certain sum was to be paid. The court hypothetically stated several contracts to the subject-matter of which the writing might have applied and reached the conclusion that one of the essential terms was omitted, namely, the subject-matter of the contract. There was no question in that case with reference to connecting two separate writings which together might have constituted an enforcible contract.

The case upon which the defendant relies most particularly is that of *Evans* v. *Pelta* (*supra*), decided in the First Department. In that case a memorandum of the order was made by plaintiffs' agent and transmitted to the plaintiffs and was not signed by the defendants. Later the defendants wrote the plaintiffs acknowledging that they " placed an order for a few skirts, Dec. 7th " and requesting the plaintiffs to delay shipping. Later the defendants again wrote stating, " We will let you know when to ship goods bought." The court said: " Without the testimony of the salesman who took the order it would be absolutely impossible to tell a single element of the terms of sale. At most, we have a memorandum signed by the defendants, admitting that they had given some sort of an order; but that is not sufficient to satisfy the requirements of the statute."

The only cases cited by the court in that opinion were *Brauer* v. *Oceanic Steam Nav. Co.* (178 N. Y. 339) and *Wilson* v. *Lewiston Mill Co.* (150 id. 314). Neither of these cases reaches the point involved here. They simply sustain the well-settled proposition that verbal evidence cannot be resorted to in order to supply any of the essential terms of the contract which the writing or writings relied upon omit. In the first case it was expressly conceded that there were essential conditions of the real contract on which the writings were silent and in the second case the court held that there was no implication to be drawn from a writing that an offer had been made and accepted. The *Evans* case is also distinguishable from the case at bar in that the memorandum prepared by the agent in that case was simply transmitted to the agent's principal. There was no carbon copy left with the other party as in this case. The oral negotiations were not reduced to writing and a carbon copy left with the party to be charged as written evidence of the agreement of the parties. In the *Evans* case the memorandum made by the agent and forwarded to his principal may well have been a self-serving declaration not made in the presence of the other party nor submitted to him for his scrutiny. It thus would not have been competent evidence as to the terms of the contract under well-settled rules. No estoppel could run in such a case and the memorandum of the agent would not be binding upon the other party. If the memorandum prepared by the agent in the *Evans* case had not been a self-serving declaration written out for his own purposes and simply forwarded to his principal and thus not binding upon the other party, but had been prepared in duplicate as in this case in the presence of the other party for the purpose of reducing to writing the oral negotiations and terms and one of the duplicates had been there-

upon handed to and received by the other party, the court could not have reached its decision in that case under the well-settled law of this State and of England. Such memorandum becomes competent evidence as to the terms of the contract. (*Lathrop* v. *Bramhall*, 64 N. Y. 365.) It is my judgment that this court should not be bound by the decision in the case of *Evans* v. *Pelta*, even if the facts in that case were precisely similar to the facts in this case, because in that event it would be out of harmony with what seems to be the settled law.

In *Barney* v. *Forbes* (118 N. Y. 580) it was held competent to show by oral evidence that two letters were inclosed in an envelope and mailed by the defendant to the plaintiffs. The court said: " It was competent to show this fact by oral evidence, for the same reason that it is competent to show by like evidence how and when letters forming a part of an entire correspondence were received. The delivery and circumstances attending the delivery of writings may be shown by oral evidence."

In *Raubitschek* v. *Blank* (80 N. Y. 478) two parties negotiated for the exchange of certain real estate. The terms were agreed upon verbally by them. The defendant was to pay a sum agreed upon as the difference in the values of the lands to be exchanged. He gave to the other party a check for $500 as a payment, receiving therefor a receipt signed by the other party. The receipt stated that the check was received on account of the exchange of said lands, specifying them, and then stated the terms. The defendant thereafter refused to enter into a written contract as was agreed, and stopped payment of the check. In an action upon the check parol evidence was given as to the contents of the receipt, it having been lost. The receipt was not signed by the defendant, but the court held that he had signified in writing his acceptance of its terms by signing the check and that parol evidence was admissible to show the circumstances under which the writings were delivered, and to give secondary evidence of the contents of the receipt. The court said: " The receipt here was in the nature of a proposition to sell and exchange, and the check an acceptance of the offer. The contract was thus made out if the receipt, as already stated, contained sufficient to show its terms and conditions. The mutual relation of these several writings appeared upon their face quite as clearly as it does where a letter has been written which contains the terms of the contract and there is an acceptance. The authorities hold that it is not essential that both the writings should contain all the elements of the contract. It is sufficient if when taken together, a contract is made out, and there may be an identification of the documents, where there

is an offer and acceptance, by parol evidence. (*Long* v. *Millar*, L. R. 4 C. P. Div. 450, 454, 455; *Ridgway* v. *Wharton*, 6 H. L. C. 238; 27 L. J. Ch. 46; *Baumann* v. *James*, L. R. 3 Ch. App. Cas. 508, 511.) "

The case of *Long* v. *Millar* (*supra*), cited by the court in *Raubitschek* v. *Blank* (*supra*), is the leading case under the English law upon the question of admissibility of parol evidence to connect documents so as to constitute a contract in writing under the Statute of Frauds. (See 29 Charles II, chap. 3, § 4.) It was decided in 1879 and has been followed in the cases of *Cave* v. *Hastings* (L. R. [1881] 7 Q. B. Div. 125) and *Oliver* v. *Hunting* (L. R. [1890] 44 Ch. Div. 205) and is approved and followed by the Court of Appeals in the case of *Raubitschek* v. *Blank* (*supra*).

In *Long* v. *Millar* (41 L. T. Rep. 306) the plaintiff signed a document agreeing to purchase certain land for £310 and to pay £31 as a deposit. No seller's name was mentioned in the document and it was not signed by the defendant. The defendant gave the plaintiff the following receipt for the deposit:

" AUCTION & ESTATE AGENCY OFFICES.

"*Sept.* 21, 1877.

" Received of Mr. G. Long the sum of £31 as a deposit on the purchase of three plots of land at Hammersmith.

"(Signed) C. W. MILLAR."

The plaintiff signed the following document:

" AUCTION & ESTATE AGENCY OFFICES,

" 8 Wellington Road,

"*Sept.* 21, 1877.

" I hereby agree to purchase the three plots, 48 ft. frontage, of freehold land in Richford St., Hammersmith, for the sum of £310 and I agree to pay as a deposit, and in part payment of the aforesaid purchase money the sum of £31 and to complete the purchase and pay the balance of the purchase money on or before the 5th of October next.

" (Signed) GEO. LONG."

The court said: " It is proved by parol evidence that the agreement for purchase made by Long is the paper signed by him. If we place the two documents together, then it is plain that the word ' purchase ' is shown to mean that there is an agreement to purchase, and so there is an identification of the transaction. * * * The principle is this: suppose A writes to B saying, ' I will give £1000 for your estate,' stating the terms on which he is willing to purchase, and B in a hurry says, ' I accept your offer,' and writes those words and signs his name to them; then

B signs only the words, ' I accept your offer,' but then on identification of the offer by putting the papers together there is an agreement in writing "

Further the court says: " I think that if we are at liberty to read the different documents together there can be no doubt that there is a sufficient memorandum. It is not necessary that there should be a specific description of the second document in the first, or of the first in the second, if we can clearly infer from the later document that there is a reference in it to the earlier."

The court further says: " But this principle has also been laid down that, although parol evidence cannot be given to connect the documents, parol evidence may be given to earmark any particular document that is referred to. * * * It is only the same as the rule as to a latent ambiguity. The connection must appear on the documents, and the only question here is, whether there is sufficient applicability in the receipt to the earlier document. The words were not used by lawyers, but by the parties hastily drawing up informal documents, and it may well be that the words ' the purchase ' mean the agreement to purchase. It seems to me that by adopting this view we are not unduly straining the language used."

In *Oliver* v. *Hunting* (L. R. [1890] 44 Ch. Div. 205) *Long* v. *Millar* was followed and the opinion of the court is illuminating in its analysis of the extent to which parol evidence may be given to identify and connect written instruments relied upon to comply with the Statute of Frauds. In that case Hunting agreed to sell to Oliver a freehold estate and signed a memorandum which contained all the essentials of the contract except that it omitted to ment on or refer to the property agreed to be sold. Two days afterwards Oliver pursuant to the contract sent Hunting a check for £375 as a deposit and in part payment for the purchase price. Hunting replied by letter, " I beg to acknowledge receipt of check, value £375, on account of the purchase money for the Fletton Manor House estate." It was held that parol evidence was admissible to explain the circumstances under which the letter was written, and that, as such evidence connected the letter and the memorandum, the two documents read together constituted a sufficient memorandum within the Statute of Frauds.

The court said: " I take the old rule from the original edition of Lord Blackburn, On the Contract of Sale, which is cited * * * by WILLIAMS, J., in *North Staffordshire Railway Co.* v. *Peek* (E. B. & E. 1001), where, after referring to *Hinde* v. *Whitehouse* (7 East, 558) and *Kenworthy* v. *Schofield* (2 B. & C. 945), he says: ' The principle of these cases seems to me to be well stated in

the same work by my Brother Blackburn, as follows: " If the contents of the signed paper themselves make reference to the others so as to show by internal evidence that the papers refer to each other, they may be all taken together as one memorandum in writing " ' (as in the case which I have mentioned of a letter referring to a previous letter, of which the copy is annexed); ' " but if it is necessary, in order to connect them, to give evidence of the intention of the parties that they should be connected, shown by circumstances not apparent on the face of the writings, the memorandum is not all in writing, for it consists partly of the contents of the writings and partly of the expression of an intention to unite them, and that expression is not in writing." ' The old case of *Boydell* v. *Drummond* (11 East, 142) and some other cases, might be consistent with that rule; but certainly of late a different rule has been introduced, and it is a rule, to say the least, consistent with the convenience of mankind, because if you were to exclude parol evidence to explain such a doubtful reference as ' the letter of the 14th instant,' or it might be simply ' your letter,' the result might in a large number of cases be gross injustice. Now I take it to be quite settled that in a case of that kind you may give parol evidence to show what the document referred to was. I take it that you may go further than that, and that if you find a reference to something, which may be a conversation, or may be a written document, you may give evidence to show whether it was a conversation or a written document; and, having proved that it was a written document, you may put that written document in evidence, and so connect it with the one already admitted or proved. So far there is no difficulty. That was applied in the case of *Ridgway* v. *Wharton* (6 H. L. C. 238) where the question was on the meaning of instructions which did not by any means necessarily point to a written document; but later the cases have gone further than that, and it seems to me that *Long* v. *Millar* (4 C. P. D. 450), followed by FIELD, J., in *Cave* v. *Hastings* (7 Q. B. D. 125), does establish a very much larger series of exceptions."

Calling attention to the illustration given by the court in *Long* v. *Millar* (*supra*), in relation to the words " I accept your offer," the court in *Oliver* v. *Hunting* says: " If that is sound, which I take it to be, according to other cases, and according to the convictions of Judges in older cases which are introduced into the old law, it is difficult, perhaps, to say where parol evidence is to stop; but substantially it never stops short of this, that wherever parol evidence is required to connect two written documents together, then that parol evidence is admissible."

In *Cave* v. *Hastings* (L. R. [1881] 7 Q. B. Div. 125) the plaintiff

had signed a memorandum setting forth the terms of a contract by which the plaintiff agreed to let a carriage to the defendant for the period of a year. The defendant in a subsequent letter to the plaintiff signed by him referred to " our arrangement as to the hiring of your carriage." There was no other arrangement for the hire of a carriage than that the terms of which were contained in the memorandum signed by the plaintiff. It was held that the defendant's letter sufficiently referred to the document containing the terms of the contract to constitute a good memorandum of the contract, within the Statute of Frauds.

The court said: " The letter in this case refers to ' our arrangement.' It was argued that that might refer to some other and different parol arrangement; but it seems to us that this reference to the former document is sufficient, in accordance with the principle laid down in *Ridgway* v. *Wharton.* In that case ' instructions ' were referred to, and it was held that parol evidence might be given to identify the instructions referred to with certain instructions in writing. The case of *Baumann* v. *James* (L. R. 3 Ch. App. 508) is an application of the same principle. The decision in *Long* v. *Millar* carries the application of the principle still further. An illustration given by BRAMWELL, L. J., in the case exactly fits the present case as it seems to me." The court then cites the illustration which has been quoted above in *Long* v. *Millar* where one of the parties was assumed to have written back in reply, " I accept your offer."

Other English cases could be reviewed to demonstrate that the earlier English rule of *Boydell* v. *Drummond* and *Kenworthy* v. *Schofield* was later relaxed as we have seen. The rule of the later English cases has been followed in this State. I have already referred to the cases of *Barney* v. *Forbes* (118 N.Y. 580) and *Raubitschek* v. *Blank* (80 id. 478). The cases of *Long* v. *Millar* and *Cave* v. *Hastings* were approved in the case of *Poel* v. *Brunswick-Balke-Collender Co.* (159 App. Div. 365, 375). That case was reversed in 216 New York, 310, but the Court of Appeals did not pass upon the question of the Statute of Frauds. It simply held that there was no contract established by the letters, for the reason that a subsequent letter disavowing the authority of the defendant's salesman could not supply the omission of the plaintiffs to accept the modified offer which the defendant's salesman had made.

Thus I have no difficulty in reaching the conclusion that parol evidence was admissible in the instant case to identify the memorandum slip and to prove the circumstances under which it was prepared and delivered to the defendant.

The remaining question is whether the correspondence sufficiently

evidenced an admission on the part of the defendant of the making of the order set forth in the memorandum slip.

" It is a general principle, applicable to all instruments or agreements, that whatever may be fairly implied from the terms or language of an instrument is in judgment of law contained in it." (*Rogers* v. *Kneeland,* 10 Wend. 218, 250.) " Contracts required by the Statute of Frauds are subject to the ordinary rules of construction." (*Spiegel* v. *Lowenstein,* 162 App. Div. 443, 449.) " A written agreement is deemed to contain and embrace not only the things expressed therein, but the things that are to be implied from reasonable inferences." (*Seymour* v. *Warren,* 179 N. Y. 1, 4.)

It is unnecessary to refer to many other cases to demonstrate that it has been clearly held in cases of this character that the memorandum signed by the party to be charged is sufficient if its language so indicates an admission of an acceptance that it can be implied from reasonable inferences without directly stating an acceptance.

In *Raubitschek* v. *Blank* (80 N. Y. 478) there was no acceptance otherwise than by the making and delivery of a check. The court said: " The receipt here was in the nature of a proposition to sell and exchange, and the check an acceptance of the offer." In that case parol proof was held permissible to show the offer that was accepted by the check.

In *Beckwith* v. *Talbot* (95 U. S. 289) there was simply a reference " to the agreement " in a letter signed by the party to be charged. With the aid of parol proof to show what agreement was meant the court held that the statute was satisfied.

In the case of *Smith* v. *Colby* (136 Mass. 562) the party to be charged signed a letter stating, " We will undertake the croquet job upon the terms agreed upon when at your place." There was an unsigned memorandum containing the terms agreed upon. The court said that the letter signed " must be presumed to refer to the agreement signed by the defendant and in the possession of the plaintiffs, and the memorandum and that letter would be sufficient to prove a memorandum signed by the plaintiffs, within the Statute of Frauds."

The court below has found that the memorandum slip containing all the necessary terms in writing was delivered to the defendant on June 23, 1920, at the conclusion of the oral negotiations. It evidenced in writing an order for one car of Delaware stock feed consisting of thirty tons in 100 pound sacks at the price of seventy-three dollars and fifty cents a ton. The defendant was given an option to have the feed shipped part at one time and part at another with other grains or feeds in mixed cars provided of course

the buyer purchased of plaintiff other grains or feed to go into such mixed car, which it never did. It is the fair interpretation of this order of June twenty-third that the defendant's agreement to take the thirty tons of stock feed was not contingent on its purchasing other grains and feeds to make up a mixed car. Bearing this in mind together with the finding of the court which we think was sustained by the evidence that the written copy of the memorandum slip had been delivered to the defendant and was in its possession, the inference is irresistible that the defendant in its replies to the plaintiff's letters of September first and October fifth, conceded that an offer had been made and accepted as embraced in the written order of June twenty-third. The defendant's reply in each case must be read and its meaning construed in connection with the plaintiff's letter to which it was a response. The reference by the defendant to the ordering of a mixed car was not in any sense the attachment of a condition not in the original order. It was in full accordance with it and an attempt to carry it out. Read in connection with the letter to which it was a response the only reasonable interpretation to be given to his language when he speaks of " this car " is that he referred to the " car of stock feed, your order of June 23d," referred to by the plaintiff. It was an implied confirmation of the order and in furtherance of the option expressly allowed him. Having reached the conclusion that the memorandum slip had been del vered and was in the possession of the defendant, it is unjustifiable to attribute a meaning to the defendant's letters in harmony with a discarded theory of the case. It cannot be presumed that the sense in which the defendant wrote was in accordance with his understanding of the oral negotiations and offer as testified to by Carpenter, namely, that he had not bought the stock feed except as conditioned upon reaching terms as to other feeds to be mixed in the car.

The language used by the defendant in its responses to the plaintiff's letters must be colored by the facts found and not by the findings refused. I can only reach the conclusion that the responses of the defendant to the plaintiff's letters of September first and October fifth constituted tacit admissions of the order of June twenty-third, and that the defendant merely sought delay at that time for the purpose of arranging the method of delivery within the option afforded to it in the order of June twenty-third. Through all of the correspondence there was never a suggestion on the part of the defendant that it had not ordered a car of stock feed until November twenty-seventh when it repudiated the

22

contract which was probably actuated by the very considerable decline in the market price of the stock feed and the fact that the defendant had made more profitable purchases from other dealers in the meantime.

Being satisfied that the true interpretation of the writings is that the defendant did admit the making of the order, impliedly confirmed it over his signature and sought to arrange to carry it out in accordance with its terms, I can only conclude that the judgment must be reversed, and since the findings of fact are sufficient to warrant it that judgment should be directed for the plaintiff for the sum of $855 and interest thereon from November 27, 1920, together with costs in this court and in the court below.

All concur, except Cochrane, P. J., and H. T. Kellogg, J., dissenting.

Judgment reversed and judgment directed in favor of the plaintiff for $855 and interest thereon from November 27, 1920, with costs.