C. H. Heist Ohio Corporation, Appellant, *v.* Bethlehem Steel Company, Respondent, et al., Defendant.

Fourth Department, January 9, 1964.

*Borins & Snitzer* (*Louis Borins* of counsel), for appellant.

*Phillips, Mahoney, Lytle, Yorkey & Letchworth* (*David K. Floyd* of counsel), for respondent.

*Per Curiam.* This is an appeal by C. H. Heist Ohio Corporation, hereinafter called "Heist", from an order which granted summary judgment in favor of Bethlehem Steel Company, hereinafter called "Bethlehem" and from a judgment based upon the order.

Allied Material Supply Company, hereinafter called "Allied", entered into a prime contract for certain construction with "Bethlehem" on September 27, 1961. Article Sixth of that agreement reads as follows: "The Contractor shall promptly pay all just claims for labor, material, or otherwise in and about the performance of the Work and the Contractor expressly covenants and agrees that no liens shall be filed either by the Contractor or by any subcontractor, workman or materialman, against the property of the Company or the property of any other of the Bethlehem Companies (as that term is hereinafter defined in Clause Seventh hereof) for any work done or materials furnished in or for the performance of the

Work. The Contractor further agrees that if, notwithstanding the foregoing covenant, any liens should be filed by any subcontractor, workman or materialman against the property of the Company or of any other of the Bethlehem Companies or any part thereof or in case any attachment, mesne or otherwise, should be levied by any such subcontractor, workman or materialman against any moneys then due or to become due to the Contractor from the Company under this Agreement, it, the Contractor, will promptly discharge by bond or otherwise such lien or attachment and indemnify and protect each of the Bethlehem Companies against any loss or expense in connection therewith, including in such expense counsel fees which any of the Bethlehem Companies may reasonably incur for its protection. And as further protection to each of the Bethlehem Companies, the Contractor agrees that in case the Company shall at any time have reason to believe that the Contractor has not paid or is not paying all proper claims for labor and material done or furnished in or about the performance of the Work, which claims might under any law or statute form the basis of a lien against the property of the Company or of any other of the Bethlehem Companies, the Company may at its option withhold all or any part of any moneys then or thereafter due the Contractor hereunder until it shall have been furnished with a certificate from the proper public officials that there are no such liens undischarged of record and reasonably convincing proof that there are no unsettled claims which may become liens. In case the Contractor fails to pay such claims within thirty (30) days after payment of the same shall be due, the Company may at its option pay out of the moneys so retained the amount of such claims and the amount so paid shall be considered as payment on account of moneys due or to become due the Contractor hereunder.''

"Heist" entered into a subcontract with "Allied" on October 17, 1961. Article 5 of that subcontract provided as follows: "All terms and conditions of the Owner's Standard Contract 2500 with the Contractor will become a part of this agreement."

Special Term found that article Sixth of the prime contract was incorporated in the subcontract and that this constituted the express waiver by "Heist" to file a mechanic's lien required by section 34 of the Lien Law.

With this we disagree. Section 34 of the Lien Law reads as follows: "A contractor, subcontractor, material man or laborer may not waive his lien, except by an express agreement in writing specifically to that effect, signed by him or his agent."

Without question the pertinent provisions of the prime contract were by reference incorporated in the subcontract. (4 Williston, Contracts [Jaeger ed.], § 628; *Matter of Board of Comrs. of Washington Park of City of Albany,* 52 N. Y. 131.)

Before the adoption of section 34 of the Lien Law in 1929 there had existed some confusion as to the effect of various types of clauses and contracts whereby owners required potential lienors to waive their right to file a notice of lien. This section has settled these questions and sets forth clearly and distinctly the only manner in which the class favored by the Lien Law may waive the right to file a lien. (Blanc, Mechanics Liens, §§ 10-a, 10-b.)

By incorporating article Sixth of the prime contract in the subcontract *in hæc verba,* we have in the subcontract an express covenant of the contractor (Allied) that no lien will be filed by it or any subcontractor. " Allied " cannot deprive " Heist " of its right to file a lien by an agreement with " Bethlehem ". (*North American Iron Works* v. *De Kimpe, Inc.,* 232 App. Div. 579.)

Section 34 requires in order that the right to file a lien be waived, an *express agreement* in writing *specifically to that effect.* The intention to waive that right must by the agreement be clear and unequivocal. (*Cieri Constr. Co.* v. *Gramercy Constr. Corp.,* 13 A D 2d 901.)

Reading article Sixth of the prime contract in its entirety makes it clear that it was only " Allied " agreeing to various things as to the filing of liens including its obligation to " Bethlehem " in the event liens were filed by subcontractors. By the terms of this article, it is apparent that " Bethlehem " was looking to " Allied " for protection. This article when incorporated in the subcontract does not constitute an express agreement showing a clear and unequivocal intent on the part of " Heist " to waive the right to file a lien which is required.

The judgment and order should be reversed and the motion denied.

WILLIAMS, P. J., (dissenting). In its contract with Bethlehem Steel Company, Allied Material Supply Company, which was the primary contractor, agreed: " The Contractor * * * expressly covenants and agrees that no liens shall be filed either by the Contractor or by any subcontractor * * * against the property of [Bethlehem] ".

Thereafter the appellant, Heist Corporation, entered into a written subcontract with Allied which contained the following provision: " *All terms and conditions* of the Owner's Standard

Contract 2500 with the Contractor will become a part of this agreement." (Italics added.)

Thus Allied agreed that neither it nor any subcontractor would file a lien, and there is no doubt that this agreement was valid and binding on Allied. (Lien Law, § 34; *Cieri Constr. Co.* v. *Gramercy Constr. Corp.*, 13 A D 2d 901.) However, standing alone, the primary contract would not prevent Heist from filing a lien. (*North American Iron Works* v. *De Kimpe, Inc.*, 232 App. Div. 579.) But when Heist signed the subcontract making *all* of the terms and conditions of the primary contract a part of the subcontract, Heist became bound by all of the terms of such primary contract. (*New England Iron Co.* v. *Gilbert El. R. R. Co.*, 91 N. Y. 153, 165; 4 Williston, Contracts [Jaeger ed.], § 628, p. 901; Restatement, Contracts, § 208, subd. [b], pars. [ii] and [iii].)

In *Crabtree* v. *Elizabeth Arden Sales Corp.* (305 N. Y. 48, 55) it was said: "The view last expressed impresses us as the more sound, and, indeed — although several of our cases appear to have gone the other way (see, e.g., *Newbery* v. *Wall*, 65 N. Y. 484; *Wilson* v. *Lewiston Mill Co.*, 150 N. Y. 314) — this court has on a number of occasions approved the rule, and we now definitely adopt it, permitting the signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction. (See, e.g., *Peabody* v. *Speyers*, 56 N. Y. 230; *Raubitschek* v. *Blank*, 80 N. Y. 478; *Peck* v. *Vandemark*, 99 N. Y. 29; *Coe* v. *Tough*, 116 N. Y. 273; *Delaware Mills* v. *Carpenter Bros.*, 235 N. Y. 537, affg. 200 App. Div. 324.) "

And this is so whether Heist read the contract or not.

"In *Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, 416, this court had occasion to state the rule which we believe to be applicable to the present case: '* * * when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms.' (See, also, *Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162–163; *Amend* v. *Hurley*, 293 N. Y. 587, 595; *Matter of Levy* [*Hirsch*], 271 App. Div. 431, 433, affd. 296 N. Y. 837.) " (*Matter of Level Export Corp.* [*Wolz, Aiken & Co.*], 305 N. Y. 82, 87–88.)

Thus, the adoption of the primary contract by Heist constituted an express agreement in writing that it would not, as a subcontractor, file a lien.

There is nothing ambiguous or indefinite about the language. I quote it again for the sake of emphasis: "The Contractor * * * expressly covenants and agrees that no liens shall be filed * * * *by any subcontractor*". (Italics added.)

When Heist commenced work upon this project, it did so with full knowledge of the contents of the primary contract and with complete opportunity to protect itself accordingly. Furthermore, lack of knowledge of the provisions of the prime contract cannot be urged persuasively at this point not only because Heist is bound by the primary contract in any event (*Matter of Level Export Corp.* [*Wolz, Aiken & Co.*], *supra*) but because it is obvious that every provision in a prime contract is important to a subcontractor, who cannot safely enter into or proceed under such a subcontract without knowledge of the entire contract with the owner, and especially when such contract specifically is made a part of the subcontractor's work agreement.

Further, there is no claim that the owner breached its contract in such manner as to prevent performance by it, so as to bring this case within the scope of such holdings as *Kertscher & Co.* v. *Green* (205 N. Y. 522).

Nor is it an answer to this motion for summary judgment to say that denial thereof will not ultimately decide the question because the parties will still have an opportunity to present their positions upon a trial. The very purpose of summary judgment is to obviate trials in cases such as this.

I would affirm the judgment and order appealed from.

Bastow, Goldman and Noonan, JJ., concur in *Per Curiam* opinion; Williams, P. J., dissents and votes to affirm in an opinion.

Judgment and order reversed, with costs, and motion denied, without costs.