## BECKWITH *v.* TALBOT.

1. It is not an absolute rule that collateral papers, made by a party, which are adduced in evidence against him to supply the want of his signature to a written agreement, required by the Statute of Frauds to be "subscribed by the party chargeable therewith," should, on their face, and without the aid of parol proof, sufficiently demonstrate their reference to such agreement.

2. If the interest and cause of action of the promisees under an agreement be several, each may maintain an action against the promisor.

ERROR to the Supreme Court of the Territory of Colorado. The facts are stated in the opinion of the court.

*Mr. William H. Phillips* for the plaintiff in error.

No counsel appeared for the defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action brought by Talbot against George C. Beckwith in the District Court of Colorado for the County of Fremont, to recover damages for the breach of a contract alleged to have been made on the 7th of October, 1870, between the plaintiff and two others on the one part, and the defendant on the other, whereby they were to herd and care for a large herd of cattle for the defendant, from that time until the fifth day of December, 1872, for which he was to give them one-half of what the cattle and their increase should then bring over, $36,681.60; that is, to each one-third of such half. The declaration alleged that the plaintiff and the two persons who entered into the contract together with him (who were the sons of the defendant) performed their part of it, but that the defendant refused to sell the cattle, or to pay the plaintiff his share of their value above the said sum.

On the trial, two defences were relied on which are made the subject of assignments of error here: First, that the alleged contract was void by the Statute of Frauds, because, though not to be performed within a year, it was not in writing signed by the defendant; secondly, that it was a joint contract on which the plaintiff could not maintain a separate action.

The territorial Statute of Frauds declares that "every agreement which by its terms is not to be performed within a year,"

unless some note or memorandum thereof be in writing and subscribed by the party chargeable therewith, shall be void." The verbal difference between this statute and that of Charles II. is not material in this case.

It appeared on the trial that the agreement made by the parties was committed to writing at the defendant's instance, and was in the following words, to wit: —

"WET MOUNTAIN VALLEY, Oct. 7, 1870.

"This is to certify that the undersigned have taken two thousand two hundred and five head of cattle, valued at $36,681.60 on shares from George C. Beckwith; time to expire on the fifth day of December, 1872; then George C. Beckwith to sell the cattle and retain the amount the cattle are valued at above. Of the amount the cattle sell at over and above the said valuation, George C. Beckwith to retain one half, and the other half to be equally divided between C. W. Talbot, and Elton T. Beckwith, and Edwin F. Beckwith.

(Signed)                "C. W. TALBOT.

"ELTON T. BECKWITH.

"EDWIN F. BECKWITH."

This agreement was signed by the plaintiff and the two young Beckwiths, but was not signed by the defendant. It was delivered to him, however, and was kept by him until he produced and proved it on the trial. It was conceded by both parties that this was the agreement under which the services of the plaintiff were performed.

Two letters written by the defendant to the plaintiff on the subject-matter of the contract, and whilst he had the said agreement in his possession, and whilst it was being executed by the plaintiff, namely, one on the 21st of September, 1872, and the other on the 10th of November, 1872, were also produced in evidence; from which the following are extracts: —

"DENVER, Sept. 21, 1872.

"MR. TALBOT, SIR, — On my arrival from the mountains, I received your letter. As I have wrote you before, every day I see parties here that is offering their cattle very low. . . . I have used every exertion for the last three months to sell. . . .

"You suggest giving you a part of the cattle. That is entirely outside of the agreement. Also, where would be the interest on the amount put in the cattle coming from? And also Elton and

Edwin would be glad to do the same; but at that rate I would not get my money back I put into the cattle.

"The cattle must be sold and settled up according to the agreement. I will do every thing I can to sell at the best advantage, and you shall have every chance to get a purchaser for the cattle so as to make the most out of them. . . .

"You shall have no chance to complain in my keeping up to the agreement, as I shall strictly, although I have heard you have made complaints to parties, which I think is very unfair, and the parties you told so said so too. . .

"Yours respectfully,      GEORGE C. BECKWITH."

"DENVER, Nov. 10, 1872.

"MR. TALBOT, SIR, — At first I thought it useless to answer your letter, as I am bound by the agreement to sell the cattle in a very short time. . . I notified you to get a purchaser for the cattle months ago; and what have I received from you in return and for my pay? I must say I have never been treated so meanly by a man in my life. My rights was to sell the cattle. Does the agreement say that I was to say any thing to you or any one else?

"But what next? You quarrelled with me because I would not break the agreement and give you the cattle to sell at figures less than I had kept them in Denver for sale. Now, I have been offered $31,000 for the cattle. I have written to Edwin, and he will state to you what I wrote him to say to you.

"Yours, in haste,      GEORGE C. BECKWITH."

We agree with the Supreme Court of Colorado that, in the face of this evidence, produced by the defendant himself, he cannot deny the validity of the agreement. His letters are a clear recognition of it. In them he refers to "the agreement" again and again. He declares his intention to adhere to it, and to hold the plaintiff to it. What agreement could he possibly refer to but the only one which, so far as appears, was ever made: the one which he took into his possession, and then had in his possession; the one under which it was conceded the parties were then acting? The defendant, being examined as a witness on his own behalf, and testifying with regard to the contract between the parties, said, "The matter was all talked over, and, I thought, understood. I said to my son Elton, 'You understand the matter. Will you take a pen and paper and

write the contract?' He wrote it. Talbot read it and signed it, and then my sons signed it." On cross-examination, he said, " The contract was delivered to me after it was signed, and has remained in my possession ever since until this trial."

It is undoubtedly a general rule that collateral papers, adduced to supply the defect of signature of a written agreement under the Statute of Frauds, should on their face sufficiently demonstrate their reference to such agreement without the aid of parol proof. But the rule is not absolute. *Johnson* v. *Dodgson*, 2 Mee. & W. 653; *Salmon Falls Co.* v. *Goddard*, 14 How. 446. There may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such proof. If there is ground for any doubt in the matter, the general rule should be enforced. But where there is no ground for doubt, its enforcement would aid, instead of discouraging, fraud. Suppose an agreement be made out and signed by one of the parties, the other being absent. On the following day, the latter writes to the party who signed it as follows : " My son informs me that you yesterday executed our proposed agreement, as prepared by J. S. I write this to let you know that I recognize and adopt it." Would not this be a sufficient recognition, especially if the parties should act under the agreement? And yet parol proof would be required to show what agreement was meant. The present case is as strong as that would be. In our judgment, the defendant, unless he could show the existence of some other agreement, was estopped from denying that the agreement referred to by him in his letters was that which he induced the plaintiff to sign, and which he put in his pocket and kept, and sought to enforce against the plaintiff for two whole years.

On this point, therefore, we are clearly of opinion that no error was committed by the court below.

The allegation that the plaintiff was interested jointly with the defendant's two sons, and, therefore, could not maintain a separate action for his equal share of the profits, is equally untenable. Their interests were separate. They were all employed and hired by the defendant to herd his cattle. The evidence shows that each supported himself, found his own assistance, and paid his own expenses. Each was to have as his compen-

sation one-third of half the increased value of the cattle at the end of the employment. Neither was interested in the compensation due to the other. Sergeant Williams, in his note to *Eccleston* v. *Clipsham*, 1 Saund. 154, says, " Though a man covenant with two or more jointly, yet if the interest and cause of action of the covenants be several and not joint, the covenant shall be taken to be several, and each of the covenantees may bring an action for his particular damage, notwithstanding the words of the covenant are joint." In the present case, the cause of action was the service performed under the contract; and each performed his own distinct service, and was entitled to distinct and separate compensation therefor. The case is precisely within the category stated by the learned annotator. It is very similar also to that of *Servante and Others* v. *James*, 10 B. & C. 410, where the master of a vessel covenanted with the several part-owners to pay to them severally in certain proportions the moneys which he should receive from the government for carrying the mails; and it was held that the covenant inured to them severally and not jointly, because their interests were several. The case is also quite similar to that of an engagement with seamen for a whaling voyage, where each is to receive for his compensation a certain percentage of the profits of the voyage. Though they work together and in co-operation, they do not become partners, nor does either acquire any interest in the compensation of the others. The interest of each is separate.

In the present case, the material fact is that the plaintiff and his associates were employés, and not proprietors. They were in the service of the defendant, and employed in and about his property and business, and not their own. Hence they were not partners, either with each other or with him. They were not liable for any losses. The entire responsibility for these was on him. They were only interested in the losses as they might affect the amount of their ultimate compensation.

These considerations dispose of another point made by the plaintiff in error, though not distinctly assigned for error; namely, that the contract created a partnership between the defendant and the other parties to it. No such result was intended, nor does it follow from any fair construction of the contract. There was no community of interest in the capital

employed, nor in the profits and losses. The cattle remained the entire property of the defendant. If the whole herd had perished by distemper, it would have been his loss alone, and the other parties would only have been interested in the loss of compensation for their services.

*Judgment affirmed.*