LEON MARKS, Appellant, *v.* JOHN E. COWDIN et al., Respondents.

**Contracts — Statute of Frauds — action to recover balance due upon contract of employment and for wrongful discharge — when letters from employer to employee stating terms of employment constitute memorandum of contract within meaning of Statute of Frauds.**

1. The memorandum of a contract not to be performed within a year, required by the Statute of Frauds (Personal Property Law, § 31; Cons. Laws, ch. 41), does not have to be in one document. It may be pieced together out of separate writings, connected with one another, either expressly or by the internal evidence of subject-matter and occasion. It is not even necessary that they be writings from the promisor to the promisee. They may be from the promisor to his own agent.

2. Where, in an action to recover for wrongful discharge, the evidence shows that at the time plaintiff entered the employment of the

defendants they wrote to him that his employment was to continue for two years from a specified date at a designated salary and at once gave written notice to their salesmen that plaintiff was to become their sales manager and he served in this capacity for two years, supervising and directing the salesmen and occupying a position of general supervision, the defendants being his sole superiors, and at the end of this term there was a verbal renewal of the employment for three years, but at a larger compensation, and thereafter at the request of the plaintiff the defendants gave him a written memorandum stating, in substance, that the arrangement theretofore made continues in force at a stated salary up to the completion of the three years, but subsequently defendants appointed another as sales manager and directed plaintiff to report to him and to attend only to a designated branch of the business, such evidence is competent and sufficient to sustain a finding by the jury that plaintiff was employed as sales manager for defendants and that they removed him from that position when they changed his powers and duties.

*Marks* v. *Cowdin*, 175 App. Div. 700, reversed.

(Argued March 4, 1919; decided April 8, 1919.)

APPEAL from a judgment entered January 31, 1917, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nathan L. Miller, Morris J. Hirsch* and *Henry L. Sherman* for appellant. The writings satisfied the Statute of Frauds. (*Peabody* v. *Speyers,* 56 N. Y. 230; Browne on Statute of Frauds, § 354a, p. 482; *Spiegel* v. *Lowenstein,* 162 App. Div. 443; *Flash* v. *Rossiter,* 116 App. Div. 880; *Argus Co.* v. *Mayor, etc.,* 55 N. Y. 498; *Hagan* v. *D. S. M. Co.,* 9 Hun, 73; *Davis* v. *Dodge,* 126 App. Div. 469; *United Press* v. *N. Y. Press Co.,* 164 N. Y. 406; *Hoadly* v. *McLaine,* 10 Bing. 482; *Ashcroft* v. *Morrin,* 4 M. & G. 450; *Union Bank* v. *Leary,* 77 App. Div. 332.) Evidence was properly received showing the character of

work performed by plaintiff for defendants prior to January 1, 1913. (*Seymour* v. *Warren*, 179 N. Y. 1; *Flash* v. *Rossiter*, 116 App. Div. 880; *Hagan* v. *Domestic Sewing Machine Company*, 9 Hun, 73; *Davis* v. *Dodge*, 126 App. Div. 469.)

*John G. Milburn* and *William L. Carns* for respondents. The written memorandum signed by defendants was not sufficient within the Statute of Frauds to constitute the contract which the plaintiff asserts as the basis of his claim. (*Hagan* v. *Domestic S. M. Co.*, 9 Hun, 73; *Wright* v. *Weeks*, 25 N. Y. 159; *Drake* v. *Seaman*, 97 N. Y. 230; *Coe* v. *Tough*, 116 N. Y. 273; *Mentz* v. *Newritter*, 122 N. Y. 491; *Seymour* v. *Warren*, 179 N. Y. 1.) The defendants' objection to testimony showing the work done and duties performed by the plaintiff during the entire period of his service as the basis of the claim he makes to the position he held in the defendants' business under his contract should have been sustained. (*Wright* v. *Weeks*, 25 N. Y. 159; *Drake* v. *Seaman*, 97 N. Y. 230; *Coe* v. *Tough*, 116 N. Y. 273.)

CARDOZO, J. The action is one by employee against employer for wrongful discharge.

The plaintiff entered the defendants' service in 1910. The defendants wrote him that his employment was to continue for two years from January 1, 1911, at an annual salary of $15,000. The hope was expressed that at the end of the term he might be accepted as a partner. He was given the privilege of starting his employment earlier if he pleased. In point of fact, he did start it in July, 1910. He took the place of another man, then leaving the defendants, who had acted as general manager. At once, the defendants gave written notice to their salesmen. They wrote that the plaintiff was about to join their staff. " He will become our *sales-manager.*" And again: " We feel confident that with him *in com-*

*mand,* we will not only keep up our business, but will increase it to the largest dimensions." The plaintiff's position is thus described in letters signed by the defendants. Its range is sketched in outline. The picture is completed when we view the course of dealing. The defendants were manufacturers, importers and sellers of ribbons. The plaintiff took charge of the selling department. He supervised and directed the salesmen. He helped the defendants themselves in selecting designs and fixing prices. He made trips abroad, inspected the foreign styles, and purchased the foreign merchandise. His position was one of general supervision. The partners were his sole superiors.

At the beginning of 1913 there was a renewal of the employment for three years, but at a larger compensation. The new contract was made by word of mouth. Nearly a year later its terms were put in writing. Some of the defendant's salesmen had expressed hostility toward the plaintiff. The defendants reproved him, and said that he would have to leave. The disagreement, though amicably adjusted, seems to have been a warning to the plaintiff that his tenure was insecure. Thus warned, he requested and received the following memorandum:

"NEW YORK, *December* 22, 1913.

"It is understood between Johnson Cowdin & Co. and Leon Marks that the arrangements made for employment of Leon Marks in our business on January first, 1913, for a period of three years from that date at a salary of $15,000.00 (fifteen thousand) per year plus five (5%) per cent. of the gross profits earned in our business which we agree shall be not less than $5,000 00/100 per year — continues in force until Jan. 1st, 1916.

"JOHNSON COWDIN & Co.
"JOHN E. COWDIN,
"E. N. HERZOG."

For a time the plaintiff's services continued unchanged. The trouble began in the summer of 1914. Some of the

events of that season are in dispute. We state the plaintiff's version, for it was accepted by the jury. One of the defendants said to the plaintiff, " I am going to put Mr. McLaren, who has been assisting you, in your position." The plaintiff was notified in writing: " The selling department will be in the hands of Mr. McLaren, and you will naturally report to him." The title of sales-manager, which had once been his, was thenceforth to be another's. In the past the chief business had been the sales to dealers in ribbons. One of the minor incidents had been the sales to manufacturers of dresses, under-wear and other articles, who used ribbons incidentally in making up their products. The plaintiff was directed in the future to attend to this trade exclusively. Accord-ing to his testimony, he was to do the work of salesmen who had formerly been paid at the rate of $25 a week. According to the testimony of the defendants, he was to have salesmen under him, and was to develop a new branch of trade. Over him, however, was to be McLaren, with general power of control. The plaintiff protested that the defendants in thus changing his duties were changing his position. His refusal to submit to the change was followed by his discharge, and the discharge by this lawsuit. The plaintiff had a verdict of $24,794.52. The Appellate Division reversed the judgment and dismissed the complaint.

The chief question in the case grows out of the Statute of Frauds. The contract of employment was not to be performed within a year. There is need, therefore, of a note or memorandum of its terms, subscribed by the parties to be charged (Personal Property Law, sec. 31; Consol. Laws, chap. 41). The defendants signed a memorandum which continued an existing employment, but which did not describe its duties. The question is whether the position may be identified by proof of the surrounding circumstances. The employment under the new contract began in January. The memorandum was

not signed till the following December.  It assumes the existence of a position which the plaintiff is then filling. It says that the employment shall be continued for a term and at a salary prescribed.  A position then held is carried forward and preserved.  The tests to be applied in order to identify the employment are thus embodied in the writing.  We are not left to gather the relation between the parties from executory promises.  We are informed that the relation then existing is the one to be maintained.  If A agrees to sell to B " the house and lot now occupied by the seller," the description is not void because the bounds of occupation must be established by parol (*Doherty* v. *Hill*, 144 Mass. 465, 467; *Hurley* v. *Brown*, 98 Mass. 545; *Mead* v. *Parker*, 115 Mass. 413; *Shadlow* v. *Cotterell*, L. R. 20 Ch. D. 90; *Plant* v. *Bourne*, 1897, 2 Ch. 281; *Cave* v. *Hastings*, 7 Q. B. D. 125; *Carr* v. *Lynch*, 1900, 1 Ch. 613; *Catling* v. *King*, 5 Ch. D. 660; *Hodges* v. *Kowing*, 58 Conn. 12; *Richards* v. *Edick*, 17 Barb. 260, 269).  It is not otherwise where A agrees with B that a position in A's service then held shall be continued.  " I will keep you until January 1, 1916, at so much a year, in your present place."  By necessary implication, by inevitable construction, that is what this memorandum says.  It makes no difference whether the place is land to be occupied or a relation of employment to be filled.  Whether it is the one or the other, we do not violate the statute when we fit the description to the facts.  In thus identifying the position we are not importing into the contract a new element of promise. We are turning signs and symbols into their equivalent realities.  This must always be done to some extent, no matter how many are the identifying tokens.  " In every case, the words must be translated into things and facts by parol evidence " (HOLMES, J., in *Doherty* v. *Hill*, *supra*, p. 468; *Mead* v. *Parker*, *supra*, p. 415; 4 Wigmore on Evidence, sec. 2454).  How far the process may be extended is a question of degree (*Doherty* v. *Hill*, *supra*,

p. 469). We exclude the writing that refers us to spoken words of promise. We admit the one that bids us ascertain a place or a relation by comparison of the description with some "manifest, external, and continuing fact" (*Doherty* v. *Hill, supra,* p. 469). The statute must not be pressed to the extreme of a literal and rigid logic. Some compromise is inevitable if words are to fulfill their function as symbols of things and of ideas. How many identifying tokens we are to exact, the reason and common sense of the situation must tell us. "What, then, is a sufficient description in writing? No one can say beforehand" (JESSEL, M. R., in *Shadlow* v. *Cotterell, supra*). "You cannot have a description in writing that will shut out all controversy, even with the help of a map" (Ibid). "In every case it must be considered what is a sufficient description with reference to the surrounding circumstances and the facts" (JESSEL, M. R., in *Catlin* v. *King, supra,* p. 664). Some description there must be. Its adequacy depends upon the degree of certainty attained when the words are applied to things. From correspondence we infer identity (*Beckwith* v. *Talbot,* 95 U. S. 289, 292). A has been employed by B as a bookkeeper and accountant. He receives a writing to the effect that his employment, which is stated to have begun some years before, is continued, for a given term. We shall make a farce of the statute if we say that oral evidence is incompetent to show that A is not expected to do the work of a porter. "There is no mystery about the Statute of Frauds" (CHITTY, L. J., in *Plant* v. *Bourne, supra*). The memorandum which it requires, like any other memorandum, must be read in the light of reason (Ibid).

In this case the plaintiff does not need the aid of one spoken word of promise to identify his place. His first contract was for two years, from January 1, 1911, to January 1, 1913. During that period, writings subscribed by the defendants attest the nature of his position.

The memorandum exacted by the statute does not have to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion (*Ridgway* v. *Wharton,* 6 H. L. C. 238; *Cave* v. *Hastings,* L. R. 7 Q. B. D. 125; *Oliver* v. *Hunting,* L. R. 44 Ch. D. 205; *Bibb* v. *Allen,* 149 U. S. 481, 496; *Peck* v. *Vandemark,* 99 N. Y. 29, 34; *Coe* v. *Tough,* 116 N. Y. 273; *Levin* v. *Dietz,* 106 App. Div. 208, 211; *Title G. & T. Co.* v. *Lippincott,* 252 Penn. St. 112; Pollock, Contracts [8th ed.], p. 171). It is not even necessary that they be writings from the promisor to the promisee. They may be from the promisor to his own agent (*Gibson* v. *Holland,* L. R. 1 C. P. 1; *Townsend* v. *Hargraves,* 118 Mass. 325, 335; *Argus Co.* v. *Mayor, etc., of Albany,* 55 N. Y. 495, 505; *Peabody* v. *Speyers,* 56 N. Y. 230, 237; Browne, Statute of Frauds, sec. 354a). Tested by these rules, the first contract is plainly valid. The second must be interpreted in the light of what had gone before. The circumstances are persuasive in their collective force. We see this when we put them together. There is a note or memorandum in writing that the plaintiff was employed in 1911 to act for two years as the defendants' sales-manager. There is evidence, not contradicted, that for two years he did occupy that position. There is evidence, again uncontradicted, that after the expiration of his first contract, he occupied the same position. And there is a note or memorandum in writing that in December, 1913, the position then filled was continued for a term of years. To give heed to these things is not to ignore the rule that the writing must contain all the material terms of the agreement. It is to explain the memorandum without changing or enlarging it. We think the process is one that is justified by precedent (*Beckwith* v. *Talbot,* 95 U. S. 289, 291, 292; *Hagan* v. *Domestic Sewing Machine Co.,* 9 Hun,

10

73; *Davis* v. *Dodge,* 126 App. Div. 469, 476; *Carr* v. *Lynch, supra; Plant* v. *Bourne, supra; Title G. & T. Co.* v. *Lippincott, supra*).

The plaintiff, then, was employed as sales-manager, or at least a jury might so find. Finding that, they might also say that the defendants removed him from that position when they changed his powers and his duties. It is true that in the past he had visited the manufacturers and solicited their trade. But that had been a mere incident to the work of management and supervision. The defendants did not fail to appreciate the significance of the change. They told the plaintiff, if we may credit his testimony, that they were giving his position to another. He had been sales-manager before. He was to be sales-manager no longer. We do not mean to say that he was at liberty to show, by evidence *dehors* the writing, that under his contract of employment special rights had become his by force of special promises. To do that would be to do more than identify a position with known and established attributes. It would be to surround the position with peculiar privileges and exemptions. The defendants were free to change the plaintiff's duties at their pleasure as long as the position was unchanged in the things that determine its identity. Beyond that they could not go. It is no answer to say that, even then, the definition of the duties is left open to extrinsic evidence. That would be just as true if the description of the position as that of " superintendent " or " manager " had been embodied in the writing (*Hagan* v. *Domestic Sewing Machine Co., supra*). There would still be lacking a catalogue of the things that a superintendent or a manager does. Yet it would hardly be contended by any one that such a writing would be inadequate. The difficulty, if there is any, is the usual one that we meet in passing from the particular to the general. There are certain common properties that characterize a class and mark it off from others. These

must remain constant, or class-identity is lost. · There are certain other qualities that characterize the individual. These may be changed, and a place within the class retained. The plaintiff makes no complaint of changes in those qualities that are merely accidental. He does not complain that the defendants subtracted one incident from his position, or added another to it. He says that they changed it altogether; they took the position from one man, and gave it to another. Whether that was in truth the effect of their conduct was a question for the jury.

The Appellate Division dismissed the complaint, but also reversed upon the facts. A new trial is, therefore, necessary (*Gressing* v. *Musical Instrument Sales Co.*, 222 N. Y. 215, 221; *Maguire* v. *Barrett*, 223 N. Y. 49, 56; *Meisle* v. *N. Y. C. & H. R. R. R. Co.*, 219 N. Y. 317, 322).

The judgment should be reversed and a new trial granted, with costs to abide the event.

COLLIN, POUND, CRANE and ANDREWS, JJ., concur; HISCOCK, Ch. J., and CUDDEBACK, J., not voting.

Judgment reversed, etc.