SYDNEY F. JONES and Others, Plaintiffs, *v.* OBCANSKA ZALOZNA V. KARLINE, Defendant.

Supreme Court, New York County, November 14, 1925.

**Attachment — motion to vacate — action on guaranty of contracts for lard and ribs — complaint, with annexed exhibits and supplemental affidavits, shows damages — Statute of Frauds — cablegrams establish contract of guaranty — detailed description of terms of contracts guaranteed not required.**

A warrant of attachment will not be vacated on the ground that a cause of action is not stated and that damages are not shown, where it appears that the complaint, in connection with an exhibit annexed thereto, shows the damages alleged to have been suffered by the plaintiff.

The Statute of Frauds is not a defense to the action to recover on a guaranty of contracts for lard and ribs, since it appears that cablegrams exchanged between the parties, referring to " contracts," a word which has a special meaning in the trade well known to the parties, establish a valid contract under the Statute of Frauds. It is not necessary, in order to meet the defense of the Statute of Frauds, that the cablegram should set out the details of the contracts which the defendant guaranteed.

However, there can be no recovery as to the rib contracts since the cablegrams made no reference to those contracts.

MOTION by defendant to vacate a warrant of attachment upon the original papers.

*Harold J. Baily*, for the plaintiffs.

*Katz & Sommerich* [*Otto C. Sommerich* of counsel], for the defendant.

PROSKAUER, J. The action is for breach of an obligation claimed to have been assumed by defendant, which is a Czechoslovakian bank, to reimburse plaintiffs for loss sustained by them in carrying certain " contracts " for lard and ribs for one Iltis.

The first ground assigned is that the papers do not sufficiently show the damage. The contention of the defendant that the 12th paragraph of the complaint is a mere conclusion of law would be sound were it not for Exhibit C annexed to and incorporated therein, which furnishes some allegation of fact as to the damage. There is, therefore, no warrant for the contention that the papers are in this respect jurisdictionally defective and the case of *Dexter & Carpenter, Inc.,* v. *Lake & Export C. Corp.* (196 App. Div. 766) is sufficient authority for permitting the plaintiffs to amplify their proof with respect to damage. By their supplemental affidavits the plaintiffs show that the term " contract " has a special and technical significance in this trade and that its use implies a definite

number of pounds of lard or ribs as the case may be. They show the market on these products and the contract prices and thus make out *prima facie* proof of damage.

The second ground of attack is that the contract is one of guaranty and that the Statute of Frauds is not satisfied.

The transaction was concluded by cables, confirmed by correspondence. Beginning on June 11, 1925, there was an exchange of cables between the plaintiffs and Iltis to the effect and substance that if the plaintiffs would continue to carry his contracts for September lard averaging 17.50 and September ribs 18.55, that the defendant bank would guarantee the plaintiffs against loss. On June fifteenth the plaintiffs cabled defendant: " Await your guarantee of payment Iltis contracts in liquidation after replacement also guarantee of prompt remittance 15,000 dollars each twenty-five points advance above average replacement price until liquidated." On the following day they cabled Iltis: " Guarantee only effective after replacement." This referred to the request of Iltis to have the plaintiffs reinstate his contracts for futures in these commodities. The cable then stated that the plaintiffs required the defendant's obligation substantially in accordance with the cable to the defendant and continued: " Cannot replace contracts under 17.50 without loss and eventual loss through lower resales has to be guaranteed from Karzal [cable name of defendant] through immediate cable remittance before execution resales." The cable then gave that day's price of September lard. On June sixteenth the plaintiffs again cabled the defendant: " Await your cable as follows after you have resold Iltis eighty contracts Sept. lard guarantee payment Iltis contracts on liquidation and agree to remit promptly dollars 15000 each twenty-five points advance above average replacement price will then replace when can do so without loss at 17.50. If Iltis orders replacement lower you must guarantee such loss before execution Sept. lard 17.30." Defendant then cabled plaintiffs: " Referring to cable AJK [that is, the cable of June 16th above quoted] intended to give full guarantee including prompt remittance when market increases above 17.50 for 25 points dollars 15000." Iltis was apparently selling short and the plaintiffs between June nineteenth and June twenty-second sent several cables to both Iltis and the defendant stating what they had done in reliance on this cable from the defendants. On June twenty-second the defendant cabled the plaintiffs: " Abstained from intended guarantee owing to price advance will await further market developments," to which the plaintiffs replied: " We have fulfilled terms on which guarantee promised hold you responsible." Thereupon defendant replied: " Confirm acceptance guarantee AJK

engagement proposed form." Evidently, desiring to make assurance doubly sure, the plaintiffs replied: " Confirm receipt your guaranty on terms mentioned our wire June sixteenth," to which defendant replied on June twenty-fifth: " Contents wire June 16th agreed."

It cannot be questioned that here was a definite engagement on the part of the defendant to guarantee against loss on the lard contracts and also to remit against those contracts a specified sum of money for a specified market advance. Technically, while it may have been a guaranty, it was also a direct engagement to make these definite payments. But even treating it as a guaranty alone, the Statute of Frauds is satisfied. The writings show the number of contracts which Iltis had. This is equivalent to a statement of the number of pounds of lard in which he was trading in view of the technical meaning of the word " contract." It showed the price and it clearly specified that it was for future delivery in September. The sole ground taken by the defendant is that there was required a fuller description of the terms of the contracts between Iltis and the plaintiffs.

The general rule, amply supported by authority, is thus stated in Williston on Sales (2d ed. § 105, p. 194): " A memorandum of a contract to answer for the debt or default of another must describe the debt guaranteed with sufficient certainty to enable it to be identified; but need not state all the terms of the contract with the principal debtor, performance of which is guaranteed, even though that contract is oral. It is sufficient if that contract can be identified from the writing when applied to existing facts."

The contracts here can readily be identified by applying the writings to the existing fact that the plaintiffs had received orders from Iltis with respect to eighty contracts for September lard.

In *Littman* v. *Brittain* (100 Misc. 255) the following letter was held sufficient compliance with the statute: " This is to confirm our telephone conversation in which I advised you that if you would make up the labels for Mr. Proctor, I would see that the account would be settled in the event he did not take care of it."

The language of HOLMES, J., in *Doherty* v. *Hill* (144 Mass. 465), quoted with approval by Judge CARDOZO in *Marks* v. *Cowdin* (226 N. Y. 138, 143), is: " ' In every case, the words [used] must be translated into things and facts by parol evidence.' " Judge CARDOZO continues: " How far the process may be extended is a question of degree * * *. The statute must not be pressed to the extreme of a literal and rigid logic. Some compromise is inevitable if words are to fulfill their function as symbols of things and of ideas. * * * The memorandum which it requires,

like any other memorandum, must be read in the light of reason * * *."

Thousands of transactions in New York city are closed yearly by cable. The exigencies of international commerce make this inevitable. To require that these cables set forth, in addition to the essentials of a contract, the details which were obviously known to the parties and which are readily ascertainable, would be to transgress the rule thus laid down and render the effectuation of cable transactions well nigh impossible.

In *Smith* v. *Colby* (136 Mass. 562) a paper reciting a guaranty "Upon the terms agreed upon when at your place" was held sufficient.

In *Beckwith* v. *Talbot* (95 U. S. 289) the paper signed referred to a previous agreement; this was held sufficient.

These authorities and the language of the text writers alike require, in my opinion, the holding that these cables are sufficient compliance with the statute. There is no doubt that by these cables the defendant specifically assumed a very definite obligation. It should not be allowed to evade this obligation in the absence of a showing of defense.

I can find in the papers, however, no reference whatever to the ribs contracts sufficient to charge the defendant with an obligation to guarantee these. The amount of the attachment should be reduced, therefore, by eliminating therefrom that small portion of the damage attributable to the ribs transactions.

Motion to vacate denied. Motion to modify granted to the extent indicated. Settle order on notice.