Hagarty, J.
This is an action for damages for breach of a contract of employment of plaintiff by defendant H. R. Laboratories, Inc., hereinafter referred to as the defendant, as its chief chemist, and for accrued salary. Recovery is also sought against the codefendant on its guarantee of performance. The contractual relationship commenced in 1932. On March 16, 1945, defendant, by written notice, exercised its option pursuant to the then current contract and renewed it for a period of five years commencing May 16, 1945, at a salary to plaintiff of $10,000 a year. Defendant also verbally promised plaintiff a minimum annual salary of $5,000 more than that provided in the contract, but he received no part of this promised increase during such portion of the renewal period as he served prior to the severance of the relationship.
Defendant is engaged in the manufacture of cosmetics or so-called “ beauty preparations.” The duties of plaintiff, pursuant to fulfillment of the contract, consisted, primarily, of taking charge of and supervising (1) research work involving the creation and revision of preparations evidenced by prescriptions or formulas, (2) manufacture thereof, and (3) control of *532 the products by determination (a) of the quality of raw materials, and (b) of conformity of the manufactured products to their respective formulas. Of these three branches, the research work was the most important. The bulk of the contract is addressed to it. It engaged three quarters of the time of plaintiff. During his thirteen years of employment, plaintiff originated or completely revised 362 of the 510 products of defendant and, in the five years prior to 1945, defendant’s business increased in volume from $5,000,000 to $10,000,000 annually.
In May, 1945, practically contemporaneously with the commencement of the extended term, the defendant endeavored to prevail upon plaintiff to accede to its suggestions that his functions be severed, that a separate research and control department be created and that a new chemist be placed in charge of it. These suggestions were made during the course of a series of talks or conferences by one Mrs. Gourielli, otherwise known as Madame Rubinstein, founder of defendant and the person completely in control thereof, and by her representatives. The matter culminated on June 19, 1945, by the service on plaintiff of a written memorandum, characterized as plaintiff’s Exhibit 5. This document detailed the manner of separation of the research and control department from the manufacturing department. The research and control department was to be in charge of a new chemist and the duties of each of these two chemists were enumerated. Plaintiff testified that he was advised to “ Take it or leave it.” He replied in a written memorandum dated June 21, 1945, wherein he stated that he refused to approve the change and that it was contrary to his 11 agreement of employment.” On the following day, according to plaintiff, Madame Rubinstein rejected his suggestion that the new chemist work under him and reiterated her insistence on a separate research and control department.
Plaintiff retained an attorney who advised defendant’s representative on June 28, 1945, that plaintiff took the position that his contract had been renewed by defendant and that both parties were bound thereby. Despite the notice of renewal by defendant on March 16, 1945, and the memorandum of plaintiff dated June 21, 1945, the attorney for defendant in a letter to plaintiff dated June 29,1945, professed surprise at this attitude of plaintiff and stated that defendant would not insist on creating a separate research and control department. Plaintiff was informed therein, however, that defendant “ has engaged Mr. Otto Sobell, another chemist, whom it intended should head the proposed research and control department ”, that plaintiff *533 is “to cooperate fully with Mr. Sobell who will discuss with you the methods and steps that might be taken to bring the research and experimental work up to the standards that are required, * " e ” and that, although there is no objection to “ your being consulted with reference to these matters ” Madame Rubinstein “ will give such instructions as are necessary in the event that you and Mr. Sobell cannot agree on the policies and methods to be carried out.”
Mr. Sobell had been engaged by defendant on May 18, 1945, at the rate of $15,000 a year, subsequent to which, according to Madame Rubinstein, he performed his duties at a “ friend’s laboratory.” This employment was unknown to plaintiff and is to be contrasted with the admitted representation of the attorney for defendant to plaintiff made at or about the very time of the hiring of Mr. Sobell that‘ ‘ Madame wouldn’t engage anybody there without consulting you.” Plaintiff learned of the employment of Mr. Sobell on or about June 26, 1945, when the latter sought to purchase raw material, a function which had always been performed by plaintiff, and plaintiff was asked to approve a requisition for purchase of material which he, plaintiff, had not ordered.
On or about July 2,1945, Madame Rubinstein informed plaintiff that “ he [Mr. Sobell] starts working with you tomorrow, Dr. Karas.” It was then that plaintiff quit the employ of defendant and commenced this action.
The letter of the attorney for defendant and testimony of Madame Rubinstein that she had informed plaintiff and Sobell that they were “ to work really together; not over, not under, but together ”, evidence a clear violation of the contract, whereby plaintiff, who was in complete charge, subject only to direction by Madame Rubinstein or her representative, was required to share that authority. Actually, however, the statements placed no obstacle in the way of putting Mr. Sobell in charge of research and control in accordance with the determination of Madame Rubinstein and despite theoretical lack of separation of that department.
The conduct of defendant, to be distinguished from inconsistent statements on its behalf, warranted the finding of the learned Official Referee that Mr. Sobell was brought in to replace plaintiff, as head of the research and control department, viz., “ In,my opinion the evidence shows a clear intention on the part of the defendants to carry out the plan originally stated in Plaintiff’s Exhibit 5 to establish a separate department of research and control and to deprive Dr. Karas of his *534 authority over such work.” Plaintiff’s Exhibit 5 provided that “ All formulation problems, checking of raw materials, developing of new items, studying and improving of the present line, standardization of products, and whatever other work is requested of the Research and Control Department should be carried out by that department' alone ”, whereas, plaintiff, in charge of manufacturing, was ‘ ‘ to see that all products meet the specifications of the formula when checked by the Control Department. No products are to be filled until the OK of the Control Department is received. When a batch.of a preparation is completed, two samples must be sent to the Control Department for approval. Only after such approval is obtained, shall the product be scheduled for finished production.”
Plaintiff,' then, was stripped of his authority and relegated to the job of foreman in the manufacturing department. He was to manufacture products from raw materials checked and approved by Mr. Sobell and-in accordance with formulas of Mr. Sobell, which products, in turn, were subject to the approval of Mr. Sobell. The position of plaintiff was virtually taken from him and turned over to Mr. Sobell, by reason of which conduct defendant breached the contract. (Marks v. Cowclin, 226 N. Y. 138,147.)
As to damages, the plaintiff, prima facie, "was entitled to the stated salary payable during the remainder of the contract period, and defendants had the burden of going forward with the evidence of lesser actual damage, that they offered to reinstate plaintiff (Kay v. Frick, 211 App. Div. 809) or that, by exercise of diligence, he could have obtained similar employment. (Howard, v. Daly, 61 N. Y. 362, 370; Fuchs v. Koerner, 107 N. Y. 529; Milage v. Woodward, 186 N. Y. 252, 259; McClelland v. Climax Hosiery Mills, 252 N. Y. 347, 358.)
The adjudication of breach of contract establishes that the employment under the contract differed from that which defendant would permit plaintiff to perform. He is, therefore, not placed in the dilemma of waiving the breach and continuing in a subordinate and restricted capacity or foregoing damages. Further, defendants did not argue to the contrary at the trial or on this appeal.
There was no proof of offer by defendant to reinstate plaintiff, nor was there more than a question of fact presented as to the availability to him of similar employment.
The judgment should be affirmed, with costs.'