Donald H. Mead, J.
Defendant herein moves, pursuant to CPLR 3212 “ for an order dismissing the plaintiffs’ complaint and directing the entry of summary judgment in favor of the defendant and against the plaintiffs, on the ground there is no triable issue of fact presented in the said plaintiffs’ complaint ”. The motion was submitted to the court on papers without oral argument.
While there are numerous disputed issues of fact the noncontroversial facts are substantially as follows: On the 4th of June, 1963, the plaintiffs herein signed an instrument purporting to be a 20-year lease. In this instrument the plaintiffs are designated as landlord and the defendant is the tenant. The instrument provided: ‘ ‘ the landlord, in consideration of the rent herein reserved and the covenants and agreements herein expressed has leased and by these presents does lease, and the tenant has hired and by these presents does hire, all that certain plot, piece or parcel of land situate, lying and being in the State of New York, County of Oneida City or Town of Rome and more particularly bounded and described as follows:
‘ ‘ See attached plot plan.
“ Said premises being described on the tax records as Section Block and Lot and also as shown on map attached to this lease; together with all appurtenances thereto and all rights, title and interest of the landlord in and to all roads, streets, lanes, whether public or private, bounding said premises and to be occupied by the tenant.
“ To have and to hold the said demised premises unto the tenant, its successors and assigns, for and during the term of twenty (20) years, to commence on the 4th day of June 1963 and to end on the 3rd day of June, 1983, subject to the rents, terms and conditions herein contained; with the right and option to the tenant to renew and extend this lease for an additional term of years, as herein provided; to be used and occupied for the processing, handling, dispensing, storage, selling and distributing of food in various forms, as well as office facilities and *743 any other business in connection therewith or in addition thereto. ’ ’
The lease also provided in covenant “ 2 ”: “ landlord agrees to construct at his sole cost and expense, a building in accordance with the general plant specifications and plot plan supplied Toy tenant and approved by both landlord and tenant in writing, which plans, specifications and plot plan are made part of this lease, tenant shall furnish the plot plan and all general draivings, plans and specifications including the number and location of all electrical and plumbing outlets, entrances, windows and other details of the said building to be constructed by the landlord. The landlord, at his own cost and expense, shall procure all necessary licenses, permits and certificates for the premises. The buildings shall be constructed by the landlord in compliance with all building codes and municipal and state laws and regulations. Any corrections or changes in the general plans or specifications which may be required by any municipal or state authority shall be made by the landlord at its own expense.” (Emphasis supplied.)
The stated rental for the premises was to be in the sum of $10,500 a year, or 6% of the gross receipts after payment of all real estate taxes, whichever sum was larger. Pursuant to covenant “ 5 ” of the lease, the obligation of rent was not to commence until the building was erected and the premises completed by the landlord in accordance with the plans, specifications and plot plan as set forth in the lease.
It is conceded by the parties that the plot plan was not attached to and made part of the lease nor were the plans and specifications of the proposed building attached thereto. Plaintiffs brought action for anticipatory breach of the contract, seeking-damages in the sum of $150,000. The complaint alleges ‘ that on or about the 14th day of June, after execution of the above contract, one Herbert N. Slotnick,, President of defendant corporation, notified plaintiff, Leon A. Clifford, unequivocally that defendant corporation had no intention of carrying out its contract * * * and unequivocally repudiated same.” Attached to the complaint is a map of certain land bordering on Black River Boulevard. There appear on the map circled numerals “ 1 ” and “ 2 ”. The map contains a legend which indicates that numeral “ 1 ” refers to “Leased property sole use of Carrols New York Development Corp.” and numeral “ 2 ” refers to “ Leased property to be used jointly with R. B. C. Inc. by Carrols New York Development Corp. during Sept, thru May each year. Exclusively Carrols during balance of year.”
*744 Following service of this complaint the defendant moved, pursuant to CPLR 3211 (subd. [a]), for an order dismissing the cause of action on the grounds “ That the cause of action for breach of contract alleged in the complaint has no validity by reason of a condition precedent in the contract which said condition was not met by either party.” This motion was heard by the Honorable Gael W. Petebsox, Justice of the Supreme Court, at a Special Term of said court in and for the County of Oneida on January 7, 1964, and the relief requested by the defendant denied by decision dated January 23, 1964. This decision stated:
“The ground on which dismissal is sought is that a ‘plot plan ’ which should have been attached to the contract was not so attached and that after the contract was executed the defendant reviewed the ‘ plot plan ’, that is a surveyor’s drawing of the location and dimensions of the lot on the ground, and that the ‘ plot plan ’ showed a frontage on the Black River Boulevard of only 59 feet which defendant claims was contrary to assurances given to Magley by the plaintiff Leon A. Clifford. Magley claims Clifford told him the frontage on the boulevard was 89 feet.
“ The res gestae of defendant’s position here is that i-t was misinformed and mislead by the plaintiff and in reliance on the information given to its agents and employees by the plaintiffs it entered into a contract that would not have been acceptable to it had it known that the boulevard frontage was only 59 feet.
“ But, the plaintiffs by affidavit deny that any representations were made to Magley or other officers or employees of defendant that the frontage was 89 feet.
“ There is much argument in the affidavits submitted to support the positions of the adversaries, but from the above resume it is obvious that a triable issue of fact exists that may not be disposed of summarily on affidavits by motion.
“ The case law is replete with citations to the effect that a dispute of facts relating to issues material to the litigation can only be decided on trial. This motion falls ivell within the mandate of the case law requiring trial.
“ The Court is bound by precedent to deny the motion. Questions of fact are involved which preclude a decision of these issues as a matter of law.”
Affidavits similar to those usually associated with motions for summary judgment were submitted by both parties and while it is difficult to determine from the decision whether the court treated the motion as one for summary judgment, it would appear from the decision that such was the case. Defendant *745 appealed from the order of denial and the Appellate Division, Fourth Department, unanimously affirmed the order, stating in its Per Curiam memorandum: “ In affirming we do not reach or pass upon any question which may arise if and when the Statute of Frauds is pleaded as an affirmative defense.” (24 A D 2d 532.)
Defendant thereupon served an answer pleading, among other things, the affirmative defense of the Statute of Frauds and now brings on this motion for summary judgment (CPLR 3212) on the grounds that the contract sought to be enforced is void pursuant to subdivision 2 of section 5-703 of the General Obligations Law. That section provides: “ A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the part}?- to be charged, or by his lawful agent thereunto authorized by writing. ’ ’ It is the contention of the defendant that, since the plot plan and the plans and specifications for the structure to be erected on the premises were not attached to the lease, the contract is void as a matter of law so as to preclude an action for anticipa • tory breach thereof. Further, that in the absence of any description of the leased premises in the contract, resort may not be had to an unsigned writing or to parol evidence in order to supply the claimed deficiency.
In cases where a writing or memorandum relating to the sale or lease of real estate is attacked under the Statute of Frauds for insufficiency in respect to the identification of the subject matter, the general rule is that while parol evidence may not be admitted as to the terms of the agreement, it nevertheless is receivable to show extrinsic circumstances relating to the situation of the parties in respect to the land, so as to enable the court definitely to ascertain the property to which the contract referred. (Miller v. Tuck, 95 App. Div. 134, 135.) Thus, there are numerous authorities which hold that where real property is vaguely or inadequately described in the writing but nevertheless susceptible of ascertainment, parol evidence may be received in order to indicate the specific parcel intended to be conveyed. (Miller v. Tuck, supra; Crandall v. Smith, 172 Misc. 92 and cases therein severally cited.) However, in the case at bar it is urged by defendant that in the absence of the plot plan the contract is completely lacking and silent as to the premises intended to be leased and to permit the subject matter to be furnished by parol or extrinsic evidence would open the door to the very evils the Statute of Frauds was *746 designed to avoid. On the other hand, the plaintiff argues that the plot plan, which was in existence and in the possession of the defendant when the contract was executed, clearly refers to the subject matter of the transaction and should be read together with the signed instrument in spelling out the intent of the parties.
Prior to the decision rendered in Crabtree v. Elisabeth Arden Sales Corp. (305 N. Y. 48), the courts were not in complete agreement on the issue as to what documents could be considered in determining the existence of a contract or memorandum for the sale or lease of real property so as to meet the requirements of the Statute of Frauds. In that case plaintiff sued to recover damages for breach of an alleged contract of employment and defendant pleaded the Statute of Frauds. In seeking to overcome the affirmative defense plaintiff offered an unsigned memorandum prepared by a secretary during an interview with the president of the defendant corporation together with two payroll cards one of which was signed by an executive vice-president and general manager of the corporation and the other signed by the comptroller of the corporation. The payroll cards indicated salary schedules and periodic salary increases but contained no information regarding the term of employment. However, the unsigned memorandum made during the initial interview in addition to a salary schedule contained the words, “ 2 years to make good ”. In affirming a judgment for the plaintiff and in commenting on the Statute of Frauds, Fuld, J., writing for a unanimous court, stated (pp. 54-56).
‘ ‘ The statute of frauds does not require the ‘ memorandum * * * to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion ’. (Marks v. Cowdin, supra, 226 N. Y. 138, 145; see, also, 2 Williston, op. cit., p. 1671; Restatement, Contracts, § 208, subd. [a].) Where each of the separate writings has been subscribed by the party to be charged, little if any difficulty is encountered (see, e.g., Marks v. Cowdin, supra, 226 N. Y. 138, 144-145). Where, however, some writings have been signed, and others have not — as in the ease before us — there is basic disagreement as to what constitutes a sufficient connection permitting the unsigned papers to be considered as part of the statutory memorandum. The courts of some jurisdictions insist that there be a reference, of varying degrees of specificity, in the signed writing to that unsigned, and, if there is no such reference, they refuse to permit consideration of the latter in determining whether the memorandum satisfies the statute. (See, e.g., Osborn v. *747 Phelps, 19 Conn. 63; Hewitt Grain & Provision Co. v. Spear, 222 Mich. 608.) That conclusion is based upon a construction of the statute which requires that the connection between the writings and defendant’s acknowledgment of the one not subscribed, appear from examination of the papers alone, without the aid of parol evidence. The other position — which has gained increasing support over the years — is that a sufficient connection between the papers is established simply by a reference in them to the same subject matter or transaction. (See, e.g., Frost v. Alward, 176 Cal. 691; Lerned v. Wannemacher, 91 Mass. 412.) The statute is not pressed ‘ to the extreme of a literal and rigid logic ’ (Marks v. Cowdin, supra, 226 N. Y. 138, 144), and oral testimony is admitted to show the connection between the documents and to establish the acquiescence, of the party to be charged, to the contents of the one unsigned. (See Beckwith v. Talbot, 95 U. S. 289; Oliver v. Hunting, 44 Ch. p. 205, 208-209; see, also, 2 Corbin, op. cit., §§ 512-518; cf. Restatement, Contracts, § 208, subd. [b], par. [iii].)
‘ The view last expressed impresses us as the more sound, and, indeed — although several of our cases appear to have gone the other way (see, e.g., Newbery v. Wall, 65 N. Y. 484; Wilson v. Lewiston Mill Co., 150 N. Y. 314) — this court has on a number of occasions approved the rule, and we now definitively adopt it, permitting the signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction. (See, e.g., Peabody v. Speyers, 56 N. Y. 230; Raubitschek v. Blank, 80 N. Y. 478; Peck v. Vandemark, 99 N. Y. 29; Coe v. Tough, 116 N. Y. 273; Delaware Mills v. Carpenter Bros., 235 N. Y. 537, affg. 200 App. Div. 324.)
“ The language of the statute — ‘ Every agreement * ® * is void, unless * * * some note or memorandum thereof be in writing, and subscribed by the party to be charged ’ (Personal Property Law, § 31) — does not impose the requirement that the signed acknowledgment of the contract must appear from the writings alone, unaided by oral testimony. The danger of fraud and perjury, generally attendant upon the admission of parol evidence, is at a minimum in a case such as this. None of the terms of the contract are supplied by parol. All of them must be set out in the various writings presented to the court, and at least one writing, the one establishing a contractual relationship between the parties, must hear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed. Parol evidence — to portray the circumstances surrounding the making of the memorandum — serves only to *748 connect the separate documents and to show that there was assent, by the party to be charged, to the contents of the one unsigned. If that testimony does not convincingly connect the papers, or does not show assent to the unsigned paper, it is within the province of the judge to conclude, as a matter of law, that the statute has not been satisfied. True, the possibility still remains that by fraud or perjury, an agreement never in fact made may occasionally be enforced under the subject matter or transaction test. It is better to run that risk, though, than to deny enforcement to all agreements, merely because the signed document made no specific mention of the unsigned writing. As the United States Supreme Court declared, in sanctioning the admission of parol evidence to establish the connection between the signed and unsigned writings. ‘ There may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such [parol] proof. If there is ground for any doubt in the matter, the general rule should be enforced. But where there is no ground for doubt, its enforcement would aid, instead of discouraging, fraud. ’ (Beckwith v. Talbot, supra, 95 U. S. 289, 292; see, also, Raubitschek v. Blank, supra, 80 N. Y. 478; Freeland v. Ritz, 154 Mass. 257, 259; Gall v. Brashier, 169 F. 2d 704, 708-709; 2 Corbin, op. cit., § 512, and cases there cited.) ”
In seeking to distinguish the case at bar from the Crabtree decision the defendant cites Chu v. Chu (9 A D 2d 888) and Brause v. Goldman (10 A D 2d 328). In each of the cited cases the First Department of the Appellate Division sustained the defense of Statute of Frauds where the unsigned documents relied upon to take the cases out of the statute were prepared by the parties seeking to establish the contracts. It is claimed here that the unsigned and unattached “ plot plan ” was prepared by the plaintiff who relies upon it to establish the writing or memoranda as being sufficient to take the case out of the operation of the statute. Notwithstanding the fact that plaintiff delivered the “ plot plan ” to the defendant in the first instance, the signed instrument, which was obviously a printed form prepared and required by defendant, provided in covenant “2”: ‘ ‘ landlord agrees to construct at his sole cost and expense, a building in accordance with the general plans specifications and plot plan supplied by tenant and approved by both landlord and tenant in writing, which plans, specifications and plot plan are made part of this lease, tenant shall furnish the plot plan and all general drawings, plans and specifications, including the number and location of all electrical and plumbing outlets, *749 entrances, windows and other details of the said building to be constructed'by the landlord.” (Emphasis supplied.)
Among the papers submitted is the record on appeal to the Appellate Division from the order denying defendant’s prior motion. Contained therein is an affidavit of the plaintiff, Leon Clifford, sworn to December 30, 1963, wherein he states: ‘ ‘ The reason the plot plan was not originally attached was for purposes of defendant corporation’s convenience only. Previous to the time the contract was signed, detailed plans for the building had been submitted to deponent by defendant corporation with the statement that the building had to be completed according to plans and the details of the building could not be changed. Accordingly, deponent had sought bids on the plans for the building and, in fact, had obtained bids. The plot plan was left behind by Mr. Magiey [defendant’s employee] for the purpose of showing the contractors where to place the building thereon. Mr. Magiey was rushing deponent to get the building up. The contract was signed in Syracuse by Mr. Slotnick, the President of defendant corporation, and brought to Rome with the plot plan by Mr. Magiey. Air. Magiey delivered the signed contract to deponent and stated that Mr. Slotnick would actually formally place the building on the plot plan within a few days. Meanwhile, said plan was to be shown to the contractors who would build the building in order to speed things up.”
The plaintiffs should be given the opportunity of establishing by competent evidence, if they can, the connection between the documents and to establish the acquiescence of the defendant to the contents of the one unsigned. (Beckwith v. Talbot, 95 U. S. 289.) As was stated in Crabtree v. Elisabeth Arden Sales Corp. (supra, p. 56): “If that testimony does not convincingly connect the papers, or does not show assent to the unsigned paper, it is within the province of the judge to conclude, as a matter of law, that the statute has not been satisfied.”
In the case of Schubert v. Bowman (9 Misc 2d 111, 112), the court, in denying defendant’s motion for an order dismissing the complaint in an action brought by a vendee for specific performance of an alleged contract for the sale of real property, stated: “ Prior to the decision rendered in Crabtree v. Elisabeth Arden Sales Corp. (305 N. Y. 48), the courts were not in agreement on the issue as to what documents could be considered in determining the existence of a contract or memorandum for the sale of real property meeting the requirements of the Statute of Frauds. That case flatly stated the law to be that writings signed or unsigned, provided that they clearly refer to the subject matter of the transaction, and may be so established by *750 competent evidence, may be read together.” (See, also, Sokol v. Terry, 43 Misc 2d 168.)
Under the decision in Crabtree and upon the papers and documents submitted in support of the existence of a contract in the present action the court is of the opinion that the motion must be and it. is denied, without costs.