Jack Stanislaw, J.
On February 13, 1963 the parties put their names to a document upon which Piazza, the plaintiff bases this action for specific performance. Sutherland and D’Elia, the defendants, insist that the document is not sufficient to withstand their defense based upon the Statute of Frauds (General Obligations Law, § 5-703). Trial proceeded before the court and the following represents our decision pursuant to CPLR 4213.
The cause of action can only be sustained if the writing is, at least in the first place, a contract. It consists of three handwritten pages prepared by plaintiff’s attorney on the evening of the date noted, and was based upon various statements regarding terms and details related to him by the parties within the space of an hour or two. Pertinent to this action is a recitation that defendants, and one Caricola, owned certain lands in West *727 hampton designated as “ the oval track ”, “the drag strip”, 17 acres adjoining these, and another five-foot strip adjoining to the extent of about three acres. Sutherland owned 46%% of these lands and the other two 26%% each. There were recitations of a first mortgage reduced to $15,000 and a second mortgage of approximately $75,000. The three landowners also were stockholders in two “subsidiary” corporations, together with two others, which corporations had no interest in the land. In any event, defendants agreed to sell, and plaintiff to purchase, their interest in both property and subsidiary corporations for $16,000, but based upon Piazza’s assumption of a payment of $9,940.20 to the second mortgagee, “which payment is to be made 2/14/63 ”. The $16,000 was to be payable partly on closing and partly in two equal installments within three years thereafter. In addition, Piazza agreed to assume payment of certain other specified sums. A time and place of closing was set forth, as well as a schedule of documents to be delivered at‘such time.
Valid contracts for the conveyance of real property must be certain as to subject matter, consideration and parties, among other things. Whether or not these specifics are present in the writing upon which this action rests is a matter of no little conflict between these litigants.
Defendants identified their interest in the property as 73%%, and also located the ownership of the remaining percentage interest. The property itself, as noted, is referred to simply as a track, drag strip and surrounding acreage. Obviously, neither the description of the parcel nor even the ownership, to some extent, is identified with a great deal of precision. Assuming for a moment that the writing was a whole one, though patently obscure in some respects, the issue as to the sufficiency of the description of property would be capable of particularized expansion by parol or extrinsic evidence. A description which lends itself to definitive identification is sufficient to satisfy the Statute of Frauds (General Obligations Law, § 5-703). On the other hand, a writing devoid of any reference to or attempt at description will not support reception of proof of intent (Mandel v. Guardian Holding Co., 200 App. Div. 767).
To apply parol or extrinsic evidence the underlying description, as the writing itself, need not be perfect or even very close to perfect (Wright v. Weeks, 25 N. Y. 153). If definitive identification can be made by the use of such proof, that is, if the writing can be expanded with exactitude, then the Statute of Frauds has been satisfied. A seller’s “ property ” is easily not enough (Crandall v. Smith, 172 Misc. 92), nor is “ 60 acres ” (Cooley v. Lobdell, 153 N. Y. 596), a vague part of a larger tract *728 (Israelson v. Bradley, 139 N. Y. S. 2d 107, affd. 285 App. Div. 971), or one parcel which could as easily be another nearby similar to it and owned by the same seller (Hummell v. Cruikshank, 280 App. Div. 47). However, vague or fuzzy descriptive statements will suffice where the evidence, though extrinsic, operates to demonstrate sellers’ lack of ownership of other property in the same general area (Miller v. Tuck, 95 App. Div. 134; Waring v. Ayres, 40 N. Y. 357; Daniels v. Rogers, 108 App. Div. 338; Barber v. Stewart, 275 App. Div. 429; Leibowitz v. Buck, 276 App. Div. 1026; Morrison v. Brenmohl, 137 App. Div. 4), thus making clear identification a relatively simple proposition (see, also, Sokol v. Terry, 43 Misc 2d 168, affd. 22 A D 2d 855; Clifford v. Carrols N. Y. Development Corp., 50 Misc 2d 741).
I)’Elia conceded that he was in fact an owner of 17 acres adjoining an oval track and drag strip, and a five-foot strip. This was in part what the writing in question had recited. Sutherland admitted ownership in his pleadings. There is no question of either or both defendants’ ownership of any other property in the very broad general vicinity. Certain deeds were put into evidence by plaintiff showing defendants, among others, to have been grantees of extensively described property at Westhampton. These presumably show their ownership of the property in question. A mortgage in evidence tied D ’Elia to the oval track and drag strip which he had not conceded. The complaint, which sets forth full descriptions of all the parcels, insofar as admitted by defendants and together with the documentary addenda and admissions made during trial, all combine to isolate the property and make the initially meager description sufficiently exact to satisfy the Statute of Frauds.
Another alleged fatal defect in the writing is its confusion regarding the price and other ostensible items of consideration. Plaintiff was being induced to assume a payment due the following day by defendants’ agreement to sell their property and stock interests to him for $16,000. Piazza also assumed some other payments and was to get a transfer of defendants ’ interest in a condemnation award. It is quite clear that on February 14, 1963 Piazza did not make a payment of $9,940.20 to the second mortgagee, Tufano Contracting Corp. There was some discussion regarding the mortgage and mortgage payment as between Piazza and Tufano, and Piazza underlines the fact of these ‘1 negotiations ’ ’ as the preventive cause of Tufano’s nonforeclosure. On February 14 plaintiff states he offered to buy the mortgage from Tufano, the next day he agreed to a price, and then he related this information to D ’Elia.
*729 Tufano acknowledges the conversations and its position at the time to obtain payment, including arrearages, or else foreclose. An agreement regarding a sale of the mortgage is distinctly denied however, as is the receipt of any moneys from Piazza in satisfaction of all or part of installments due. Thereafter, Tufano continued to press for payments and did eventually receive some. Notwithstanding his failure to assume the February 14 payment plaintiff emphasizes that the second mortgage was not foreclosed or in process of foreclosure right up to the date set for closing. Therefore, defendants’ position at that latter time was theoretically the same as if plaintiff had actually made the payment. Since Piazza had agreed to assume the second mortgage anyway he points out that the transaction remained unchanged in terms of defendants’ expected net proceeds and avoidance of foreclosure, as a practical matter.
To digress for a moment, defendants submit that the writing fails to satisfy the Statute of Frauds in its ambiguity as to price and other terms. Most of the amounts set forth, whether as mortgages or general sums due, are approximated. Within the context of this writing, however, the statement of outstanding liens and moneys due is neither fatal nor beyond comprehension. The references to “ subsidiary corporations ” are similarly less mystifying in context, the more so in that the writing purported to include in the deal a transfer by defendants of their interest in these corporations. In other words, the document here is capable of supporting the transaction to which it refers, at least to the extent of nullifying a defense based upon the Statute of Frauds.
Despite all this, the fact remains that the first few lines of paragraph 11 7 ” of the agreement read: “ To induce Nicholas Piazza to assume the payment of $9,940.20 to the 2nd mortgagee, Tufano Contracting Corp., which payment is to be made 2/14/63, Sutherland and D’Elia agree to sell and Piazza agrees to purchase ”. When Piazza points out that Tufano did not foreclose on or after February 14, 1963, allegedly due to his having interceded, he is in effect attempting to demonstrate activity in equivalent performance of an assumption of the payment.
There was sharp conflict in the testimony relating to plaintiff’s arrangements, if any, with Tufano regarding the second mortgage. The resolution of these contradictions is not relevant, however, for it is enough that they exist in lieu of any indication that Piazza actually made the payment due the day after the writing was executed. The quoted part of paragraph “7”, supra, is unambiguous as it stands, and the evidence upon trial only served to emphasize its meaning. Defendants were in *730 trouble. They were faced with a mortgage payment to be made the next day — “ or else ”. Under the circumstances, plaintiff’s proposal would not only bail them out but afford them some immediate and some future cash. If plaintiff got them past the critical second mortgage payment they would be in unexpectedly fine shape. So, defendants agreed to a sale u to induce ” plaintiff’s payment of a stated sum, “ which payment is to he made 2/14/63 ” (emphasis added). Piazza’s attempt to show his assumption of that payment by prevailing upon Tufano to forego foreclosure is clearly something less than payment made the day following execution of the agreement. His assumption of payment by that date certain can only be satisfied by payment, not by inducing forbearance (Schley v. Fryer, 100 N. Y. 71; State Bank of Avon v. Sheldon, 130 Misc. 64). In any event, there is nothing to show that plaintiff bound himself for that payment notwithstanding his failure to actually make it as required. Nothing appears which demonstrates Piazza’s actual commitment to pay Tufano $9,940.20 on or after February 14, 1963 (see, as to “ assume ”, Black’s Law Dictionary, 4th ed.).
■Defendants have classified the nonpayment as the failure of a condition precedent to the (valid) contract. It seems that this is another way of saying that the writing, an otherwise ultimately enforcible contract, was in effect an option given Piazza to buy upon his acceptance of the single condition. • When"Piazza acted upon that condition other than precisely according to its terms •he failed to accept it and so the entire transaction collapsed. There is only one way in which an option can be exercised, in strict accordance with its terms, and not otherwise (Bartholf v. Hautala, 22 Misc 2d 46, and cases cited therein). When this option was not accepted as prescribed the contract could not come into valid, enforcible existence. Thus, plaintiff has failed to establish his cause of action for specific performance. The complaint is dismissed.